**BULK LIFT INTERNATIONAL, INC.**

v.

**FLEXCON & SYSTEMS, INC., et al.**

**Civ. A. No. 87–0687.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 13, 1988.

## MEMORANDUM ORDER

MILDRED E. METHVIN, United States Magistrate.

Before the court is the motion of Bulk Lift International, Inc. (Bulk Lift), plaintiff, and Thomas E. Dorn, plaintiff's patent attorney,[1] for an order quashing a deposition subpoena directed by defendants to Dorn, and for a protective order preventing defendants from seeking further discovery from Dorn by way of deposition or otherwise.

The issues presented have been fully briefed by the parties.

## BACKGROUND

Bulk Lift filed this patent infringement suit on April 1, 1987 alleging that defendants Flexcon & Systems, Inc. (Flexcon) and its president and sole owner, Daniel R. Schnaars, have manufactured and sold bulk material transport bags which infringe upon two of plaintiff's patents: Patent No. 4,307,764 (the '764 patent) and Patent No. 4,364,424 (the '424 patent).

Defendants admit in their answer that Flexcon manufactures and sells bulk material transport bags, but deny that these bags constitute infringement of plaintiff's patents. Defendants contend that the patents-in-suit are invalid on a number of grounds; among them, that the subject matter of the patents-in-suit was obvious and available in prior art. Defendants also counterclaimed against plaintiff seeking a declaratory judgment that the '764 and '424 patents, and the reissue of the '424 patent (U.S. Reissue Patent No. RE. 32,308) are invalid, void and unenforceable.

On April 27, 1988, defendants filed an amended answer and counterclaim alleging that Bulk Lift or its representatives failed to disclose material art in the procurement of the '764 patent by knowingly withholding relevant information from the U.S. Pat-

---

1. At page 4 of plaintiff's Memorandum in Support of the Motion to Quash, plaintiff states that Dorn "is a member in good standing of the Illinois bar and is the lead trial attorney for Bulk Lift in this civil action for infringement of two patents ..." The record and the docket sheet reflect, however, that Dorn has not enrolled as counsel of record in this case, and for purposes of this suit, is not "lead trial attorney." It is accepted, however, as plaintiff contends, that Dorn was retained by Bulk Lift in 1978 and has been since that time its principal patent attorney.

ent and Trademark Office (PTO). Defendants also allege that during the reexamination proceedings of the '764 patent, plaintiff or its representatives withheld information from the PTO by withholding "facts and belief" pertaining to the small entity status of plaintiff.

### THE DISCOVERY DISPUTE

In an effort to establish their defenses and counterclaims, on April 4, 1988 defendants noticed the deposition of Dorn for April 14, and served a Rule 34 request for production of documents to be produced at the deposition. The requested documents are as follows:

1. All technical records, drawings and disclosure provided to Thomas E. Dorn during the preparation of the patent applications that resulted in the patents-in-suit.

2. Any and all documents which were obtained by Thomas E. Dorn as a result of an art search relating to the alleged invention disclosed in the applications that resulted in the patents-in-suit.

3. Any and all correspondence between Thomas E. Dorn and officers of Bulk Lift International, Inc. relating to the alleged inventions during the preparation and prosecution of the applications resulting in the patents-in-suit.

4. Copies of any and all license agreements between Bulk Lift International, Inc. and other companies or individuals relating to one or more of the patents-in-suit.

5. Any and all correspondence between Thomas E. Dorn and officers of any company licensed or offered a license under one or more of the patents-in-suit.

6. Any and all letters and opinions rendered by Thomas E. Dorn regarding the validity of one or more of the patents-in-suit.

7. Any and all letters or opinions rendered by Thomas E. Dorn relating to the infringement of one or more of the patents-in-suit.

8. Any and all affidavits or sworn statements submitted by Thomas E. Dorn to the Patent Office relating to one or more of the patents-in-suit.

9. Any and all correspondence forwarded to others or received ,from others relating to the infringement by others of one or more of the patents-in-suit.

10. Any and all documents from Thomas E. Dorn to Bulk Lift International, Inc., during the time prior to or following the issuance of one or more of the patents-in-suit, which informed Bulk Lift International, Inc. of its duty to disclose material art to the Patent Office under 37 C.F.R. § 1.56.[2]

### Motion to Quash—Northern District of Illinois

Upon notice of his deposition, Dorn filed a motion to quash in the Northern District of Illinois, Eastern Division, where the deposition was scheduled to take place. The motion came before U.S. District Judge Harry D. Leinenweber on April 12, 1988. After hearing arguments from Dorn and from counsel for defendants, Judge Leinenweber stated his intention to deny the motion to quash, but then stated:

THE COURT:

I will give you the choice. Do you want me to transfer it [to the Western District of Louisiana]? I will deny the motion to quash if you want me to handle it. If you want me to transfer it, if you think you might want to be heard down there, I will transfer it.

\*     \*     \*     \*     \*     \*

MR. DORN:

Well, not for myself but as far as the client is concerned, your honor, I'll accept the transfer down there if the court will

---

**2.** Item No. 10 was amended in an amended notice of deposition. The item cited above is the amended version.

indicate that I am not required to appear in their offices at 10:00 on Thursday morning. Because I have a commitment. THE COURT:

By agreement of the parties the matter is transferred to the U.S. District Court for the Western District of Louisiana, Lafayette–Opelousas Division. By agreement the date of the deposition is continued from Thursday and to be set by agreement of the parties at a convenient date.

*(Transcript of Proceedings, Attachment to Record Document No. 46).*

### Issues Raised In Motion to Quash

Dorn argues that his subpoena and the related request for production of documents should be quashed on two grounds: attorney-client privilege and the qualified work-product immunity under Rule 26(b)(3) F.R.C.P.

Defendants respond that the shield of the attorney-client privilege has been vitiated by Dorn's knowing and willful misrepresentations or omissions to the PTO during the application and reexamination proceedings relating to the '764 patent. Defendants further argue that even if the court does not find that defendants have established a *prima facie* case of fraud on the part of Dorn, many of the documents requested are not privileged, or the privilege has been waived. In order to place the arguments of the parties in their proper context, some detailed understanding of the patents and their history is required.

### THE PATENTS AND THEIR PROCUREMENT

#### The Predecessor Patent

On October 15, 1975, Frank Nattrass and Peter Johnson Nattrass[3] filed a patent application which was ultimately granted on March 8, 1977 as Patent No. 4,010,784 (the '784 patent). The patent was issued

for a bag designed to transport bulk quantities of powdered or granular material. The bag had a top and four separate lifting loops, each loop having two legs, each of which was secured to top of the bag by stitching through three thicknesses of folded fabric. The patent abstract stated that "in a presently preferred embodiment, the filled bag has a shape resembling that of a wide-necked bottle, with a broader base and a tapered top."[4] As demonstrated by the patent, no particular specifications were made for the construction of corner seams, although the general dimension of the bag was shown as approximately square. Dorn did not act as an attorney in connection with this application.

#### The Patents-in-Suit

On June 16, 1980, Peter J. Nattrass, as inventor, applied for a second patent on a "new" bulk material transport bag. This patent was issued on December 29, 1981 as the '764 patent and was assigned to Bulk Lift.[5] The '764 bag had four separate rectangular sidewalls and a rectangular bottom. The fastening of the sidewalls to each other was characterized by an interior pleat folded so as to leave a strip inside the bag, which was then folded over a corner lifting loop. The seam pleat, the strip, and the loop legs were then fastened by zigzag anchor stitching extending from the wall tops to at least the bottoms of the lifting loop legs. Dorn is listed as an attorney in connection with the patent application.

On June 29, 1981, Peter J. Nattrass, as inventor, and Bulk Lift, as assignee, applied for a patent on an "end wall closure for bulk material transport bags." A patent was issued by the PTO on December 21, 1982 as the '424 patent. Dorn acted as an attorney in connection with this patent application. The invention embodied in this patent involves the design of a fill/discharge closure for either the bottom or top of a bulk transport bag which, when not in

---

3. Peter J. Nattrass is president of plaintiff, Bulk Lift International, Inc. (see Exhibit 3 to defendant's Memorandum in Opposition to Plaintiff's Motion to Quash).

4. A copy of the patent is listed as defendants' Exhibit No. 4 to their Memorandum in Opposition to Plaintiff's Motion to Quash.

5. The '764 patent is shown in Exhibit A to the complaint.

use, may be folded back into itself and secured so that there are no projections in the wall, and consequently, so that there is a lessened chance of accidental spilling.[6]

### Re-examination of the '764 Patent

In a prior infringement action filed by Bulk Lift against Cajun Bag and Supply Co. (Cajun Bag), the PTO granted Cajun Bag's request for reexamination of the '764 patent. At that time, Cajun Bag first raised the issue of fraud on the PTO in the procurement of the '764 patent. Cajun Bag argued that in 1978, a year after issuance of the '784 "bottleneck" patent, but more than one year before Bulk Lift applied for the '764 patent, Bulk Lift was manufacturing bags identical to or very similar to the design sought to be patented in the '764 patent. Specifically, Cajun Bag argued that plaintiff's 1978 bags featured the critical corner seam design patented by the '764 patent in 1981. Under 35 U.S.C. § 102(b), a patent cannot be awarded if the invention was described in a printed publication or was in public use or on sale in this country more than one year prior to the date of the application.

To support its contention, Cajun Bag produced two brochures which had been published by Bulk Lift in 1978. The brochures were not sufficiently detailed to show the actual construction of the 1978 bags, but Cajun Bag offered the Patent Re-Examiner a detailed drawing of the bags' actual construction.[7] In response to this drawing, Dorn filed a brief stating that "Requestor's Exhibit 2 is nothing more than argumentation submitted by the Requestor Cajun Bag & Supply Company, to illustrate the Requestor's own expansion and interpretation of a construction that might have been employed in the bags shown in the brochures ..."[8]

Dorn also argued that the brochures depicted the same kind of bag originally patented in 1977 in the '784 "bottle-neck" patent, which design had already been considered during the '764 patent proceedings. Defendants quote Dorn as arguing in a patent appeal brief: "Those two brochures, however, merely illustrate bags having bottle tops constructed strictly in accordance with the disclosure of Nattrass, et al Patent No. 4,010,784." [9]

The brochures are not in the record. However, counsel for Dorn argues that Dorn's representation to the Board was correct, and contends that "the presence or absence of a corner seam was not critical to Nattrass et al 4,010,784 or its relation to No. 4,307,764; what is critical is that the construction of Patent No. 4,307,764, the patent in suit, *eliminated* the bottleneck at the top of the bag of the earlier Patent No. 4,010,784, which was all that was wrong with the earlier bag." [10]

As a result of the reexamination, two of the claims of the '764 patent were rejected by the examiner. Ultimately, however, the two patent claims were reinstated by the Board of Patent Appeals and Interferences (the Board). The Board found that Cajun Bag's drawing of the design of the 1978 bag, as featured in the brochures, was not acceptable evidence of prior art, since there was nothing relating the drawings to the actual 1978 bag construction. The Board stated:

> Exhibit 2 however is clearly not prior art as it constitutes a drawing made by requestor purportedly showing the actual construction of the containers shown in photograph AR and brochure AS as well as advertisements AT and AR. We find no correspondence between that drawing (Exhibit 2) and the showings in the brochure, photographs, and advertisements.[11]

6. The '424 patent is shown in Exhibit B to the complaint.

7. Defendant's Rebuttal Memorandum in Opposition to Plaintiff's Motion to Quash, Exhibit 2.

8. Id., page 7.

9. Defendants' Memorandum in Opposition to Motion to Quash, page 10.

10. Plaintiff's Reply Memorandum in Support of Motion to Quash, page 7.

11. As quoted at page 3, Defendants' Rebuttal Memorandum in Opposition to Plaintiff's Motion to Quash.

## Prior Art

■ Defendants have adopted Cajun Bag's arguments, and strongly urge that the construction of the 1978 bags was material art which was knowingly concealed by Dorn and Bulk Lift in the '764 patent proceedings before the PTO. Dorn and Bulk Lift respond that the construction of the 1978 bag was immaterial, since the alleged similarity of the corner seam construction between the 1978 bags and the design patented in 1981, was not "critical" to the '764 patent.

Apparently plaintiff concedes that the brochures were being disseminated over one year prior to the '764 patent application, and that they depicted a bulk transport bag with corner seams which, in that respect, are similar to the corner seams ultimately patented in the '764 patent. Plaintiff does not explain why it or Dorn did not produce a 1978 bag or drawing of its construction for examination by the PTO during the re-examination of the '764 patent. Plaintiff contends only that the corner seam design was not a critical modification to the earlier bottleneck '784 invention; that the elimination of the bottleneck alone was the critical feature and the basis of the '764 patent.

An examination of the '764 patent convinces me that the design of the corner seams, and particularly the way in which that design provides for fastening of the lifting loops at the top of each seam, is a central design feature of the bag. True, in the portion of the patent entitled "Background of the Invention" it is noted that two previous bulk bag patents (including the '784 bottleneck patent) had "the disadvantage that the top of the bag is smaller than the cross-sectional area of the lower portion of the bag, which may inhibit filling of the bag and reduces the overall capacity." Also, under "Summary of the Invention" the patent states that one of the objects of the present invention is to "provide a bag for transporting bulk material having an open top of approximately the same cross-sectional area as the lower part of the bag and which is sufficiently strong to carry heavy loads of powdered or granulated material." However, four other objects of the invention are listed, the second one being "to provide a bag for bulk materials having lifting loops securely anchored to each corner of the bag in a manner that affords maximum strength and durability." The third object "is to provide a bag for bulk material which has a generally constant rectangular cross-section throughout its height." The fourth object "is to provide a bag for bulk material which has strengthening seams at each vertical corner." Finally, the first patented claim under the '764 patent describes the rectangular design, the open top, and the improved construction of the four sidewall seams with their unique pleats, terminal strips, lifting loops and anchor stitching.

That the elimination of the bottle top was the only critical feature of the '764 patent is also contradicted by a statement contained in plaintiff's '424 patent (involving the fill/discharge closure). Under "Background of the Invention" portion of the patent, it is stated that *"an improved construction for mounting lifting loops on bulk transport bags of this kind is disclosed in the co-pending U.S. patent application,* Serial Number No. 159,833 of P.J. Nattrass filed June 16, 1980." (Emphasis supplied). The referenced patent application was for the ultimately-issued '764 patent in dispute. Consequently, information provided to the PTO was to the effect that the '764 patent was distinguishable not only for the elimination of the bottleneck top, but for the manner in which the lifting loops were attached to the side corner seams.

Finally, Bulk Lift's position is contradicted in its own pleadings before this court. Bulk Lift provided a number of exhibits in support of its Motion for a Preliminary Injunction, filed on March 10, 1988. Plaintiff's Exhibits C2, D2, and E2 purport to show how individual features of Flexcon bags manufactured in 1986 and 1987 infringe upon Claim 1 of Bulk Lift's '764 patent. The design features complained of include the following: 1) side wall seam construction; 2) pleats sewn throughout the height of the bag along the seams; 3) terminal strips projecting from each seam,

each being wider than the leg portion of a lifting loop; and 4) attachment of the lifting loop by folding the terminal strips over one loop leg, and anchor stitching them the length of the lifting loop. Clearly, then, it was not *only* the elimination of the "bottleneck" top which is a critical feature of the '764 patent, by Bulk Lift's own admission. Contrary to Bulk Lift's argument to this court and Dorn's argument to the PTO, the side wall seam design and the manner of attachment of the lifting loops *was* a critical feature of the '764 patent design.

Considering the foregoing, I find that the corner seam design of the '764 patent was a critical design feature, and that any evidence of related prior art was material to the '764 patent proceedings.

### Defendants' New Bag

Defendants contend that, although Cajun Bag did not have the requisite proof of the 1978 bag construction, defendants have now obtained the proof. On March 21, 1988, at defendant's request, Nattrass forwarded to defendants' counsel a reconstruction of a bag manufactured and sold by Bulk Lift in 1978.[12] Defendants argue that the sidewall construction of this bag, and the attachment of the lifting loops, is the same or very similar to the design in the '764 patent. As noted above, if a bag with the same essential design was being manufactured in 1978, then under 35 U.S.C. § 102(b), it could not be patented based upon an application filed June 16, 1980.

Defendants also note that in order for plaintiff to obtain the '764 patent, limitations were added to Claim One of the patent, including "claiming the folding of the seam pleats against one sidewall over by the extra stitching."[13] Indeed, Claim One

of the '764 patent contains the following specification:

> The seam pleats being folded against one sidewall of the bag, at each top corner where a lifting loop is mounted, and the anchor stitching for the lifting loops also extending through the folded pleats.

('764 patent, Exhibit A to complaint). Although plaintiff filed a page by page refutation of defendants' arguments,[14] this statement is not refuted.

It was the recent receipt of the 1978 bag by defendants that prompted the notice of Dorn's deposition "in part, to elicit testimony regarding the question of whether the construction of the bag had ever been made known to the U.S. Patent Office."[15] The deposition of inventor Peter J. Nattrass was taken on April 21, 1988. Defense counsel asked Nattrass whether he had sent Dorn the 1978 bag in 1980, when the '764 patent application was filed. Nattrass replied that he did not remember.[16] Nattrass testified that he had never personally been in touch with the PTO and he refused to answer any further questions regarding whether he gave Dorn the brochures in 1980, on his attorney's advice.

## THE ATTORNEY–CLIENT PRIVILEGE AND WORK PRODUCT IMMUNITY: THE EFFECT OF FRAUD

█ The defendants' defense to patent infringement, among others, is that the patent is unenforceable because of the inequitable conduct of Nattrass, Bulk Lift, Dorn or a combination of the three, in the application process. *See* 37 C.F.R. § 1.56 (1977); *see also Precision Instrument Manufacturing Company v. Automotive Maintenance Machinery Company*, 324 U.S. 806, 814–16, 65 S.Ct. 993, 997–98, 89 L.Ed. 1381 (1945); *J.P. Stevens and Company, Inc. v. Lex Tex Limited, Inc.*, 747

---

**12.** See Exhibit 2, a photograph of the bag, and Exhibit 3, a letter from Nattress to defense counsel stating that the bag was produced to the design utilized by his company in 1978, attachments to Defendants' Opposition to Plaintiff's Motion to Quash.

**13.** Page 11, Defendants' Memorandum in Opposition to Motion to Quash.

**14.** See Plaintiff's Reply Memorandum in Support of Motion to Quash.

**15.** Page 4 of Defendants' Memorandum in Opposition to Motion to Quash.

**16.** Exhibit 5 to Defendants' Memorandum in Opposition to Motion to Quash, p. 89 of deposition.

F.2d 1553 (Fed.Cir.1984). A patentee who has engaged in inequitable conduct during the patent application proceedings will be unable to enforce his or her rights under the patent.[17]

The question before this court, however, is not whether the patent is enforceable, but whether the protective shield of the attorney-client privilege may be pierced. Communications between an attorney and client, otherwise protected, which are made in furtherance of a fraud are not protected by attorney-client privilege or work-product immunity. *Clark v. U.S.*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933). The party seeking discovery bears the burden of showing a *prima facie* case of fraud, including: (1) a knowing, willful, and intentional act of misrepresentation or omission before the patent office; (2) that is material; and (3) that the patent office relied upon in deciding to issue the patent. *American Optical Corporation v. United States*, 179 U.S.P.Q. 682, 684 (Ct.Cl.1973); *Research Corporation v. Gourmet's Delight Mushroom Company*, 560 F.Supp. 811 (E.D.Pa.1983).

The existence of fraudulent intent may be presumed upon proof of a knowing misrepresentation of a material fact, but may be rebutted at trial by a showing of the applicant's good faith. *American Optical*, 179 U.S.P.Q. at 684. Materiality is established where the misrepresented or withheld information relates to the subject matter of the claims. *Id.* Reliance is generally exhibited by satisfaction of a "but for" test—but for the omission or misrepresentation, the claims would not have been allowed. *Id.*

*Union Carbide Corporation v. Dow Chemical Company*, 619 F.Supp. 1036, 1052 (D.Ct.Del.1985).

The discovering party must also show that the communications or documents sought were made in furtherance of the fraud. *W.R. Grace & Co. v. P. Ballantine & Sons, Inc.*, 175 U.S.P.Q. 464 (D.N.J. 1970).

Each of the three elements must be established by at least *prima facie* evidence. "[W]hile a *prima facie* showing need not be such as to actually prove the disputed fact, it must be such as to subject the opposing party to the risk of nonpersuasion if the evidence as to the disputed fact is left unrebutted." *Duplan Corporation v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir.1976).

Applying these principles to the facts at hand, I conclude that defendants have made a *prima facie* case that a knowing material omission was made to the PTO, consisting of information regarding the sidewall seam construction of the 1978 bags being manufactured by Bulk Lift. I also find that omission of this relevant information was "relied upon" by the PTO in deciding to issue the '764 patent, and in the reexamination proceedings. I am not convinced by plaintiff's argument that the only distinction between the '784 patent and the '764 patent was the elimination of the bottleneck at the top of the bag. If this were the case, such a modification could reasonably be argued to be "obvious" under 35 U.S.C. § 103. Moreover, as discussed above, the claims of the '764 patent are detailed and specific with respect to the corner seam construction, in stark contrast to the '784 patent. The 1978 bag appears to have construction very similar to the '764 patent design, and thus would be material art relevant to the patent proceedings. The existence of this bag was withheld by Dorn or Bulk Lift or both during the original patent proceedings and the reexamination proceedings. Rather than providing a sample of the 1978 bag (which I presume was available at that time since it was provided to defendants two months ago), or providing a design sketch, Dorn

---

17. Inequitable conduct includes a "failure to disclose material information or submission of false material information with an intent to mislead." *J.P. Stevens and Company, supra*, 747 F.2d at 1559 (Fed.Cir.1984). The PTO need not rely upon the misrepresentation or omission, but materiality must be established by a showing of a "'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *Argus Chemical Corporation v. Fibre Glass-Evercoat Company*, 759 F.2d 10, 14 (Fed.Cir.1985) (quoting PTO Rule 1.56(a), 37 C.F.R. § 1.56 (1977)).

belittled Cajun Bag's sketch, depicting it as Cajun Bag's "own expansion and interpretation of a construction that might have been employed in the bags shown in the brochures AR and AS." [18]

The facts presented are sufficient to establish a *prima facie* showing of fraud on the part of Dorn. Consequently, otherwise privileged documents and communications between Dorn and Nattrass and/or Bulk Lift have lost their protection under the attorney-client privilege and the work-product immunity with reference to those documents or communications made *before or during* any of the patent proceedings relating to the '764 patent.

Communications made before the fact of or during the commission of a fraud are not protected, since to allow protection would permit an attorney to be a principal or accessory to a fraud without fear of discovery and would permit the client to commit the fraud with the aid of legal advice beforehand. Communications after the fact are still protected, however, since one of the primary purposes of the attorney-client privilege is to allow consultation in the interest of establishing a legal defense. *Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26 (D.Md.1974); *Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1975).

*Hercules, Inc. v. Exxon Corporation,* 434 F.Supp. 136, 155 (D.Del.1977). The guidelines stated above should govern the deposition of Dorn in this matter.

With respect to the ten groups of documents requested for production, only seven items remain in dispute.[19] In view of the finding that defendants have made a *prima facie* showing of fraud in connection with the '764 patent proceedings, both on initial application and reexamination, the remaining documents in dispute must be produced at Dorn's deposition with the following exceptions: 1) any communications or documents which relate solely to other patent proceedings and have no relationship to the '764 proceedings; and 2) any communications or documents made or produced after conclusion of the '764 reexamination proceedings.

## ISSUES RELATED TO THE '424 PATENT

Defendants have not attempted to make a *prima facie* case of fraud in connection with the '424 patent proceedings, and consequently the discussion above does not apply to those documents or communications. Defendants argue that since the '424 patent was prosecuted by the same attorney as the '764 patent, a *prima facie* case of fraud as to the '764 proceeding "raises the question of whether similar fraud occurred during the prosecution of the '424 patent." Defendants cite no support for this position, and this court will not extend its finding of a *prima facie* showing of fraud to the '424 patent proceedings. However, defendants also argue that the attorney-client privilege and work-product immunity do not apply to some of the categories of documents requested, and this argument bears analysis.

### Burden of Proof

The burden of proving the existence of an attorney-client or work-product privilege rests squarely on the party claiming the privilege. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.1978), *cert. denied* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). A general allegation of privilege is insufficient. A clear showing must be made which sets forth the items or categories objected to and the reason for that objection. *Peat, Marwick, Mitchell and Company v. West,* 748 F.2d 540 (10th Cir. 1984), *cert. denied* 469 U.S. 1199, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985).

---

**18.** Page 7 of Defendants' Rebuttal Memorandum in Opposition to Plaintiff's Motion to Quash.

**19.** On page 18 of defendants' Memorandum in Opposition to Motion to Quash, it is explained that item No. 5 was supplied by plaintiff, and that defendants have withdrawn their request for items No. 4 and 8.

The attorney-client privilege and work-product immunity apply to patent proceedings to the extent as to discovery in other proceedings. *Deering Milliken Research Corporation v. Tex–Elastic Corporation*, 320 F.Supp. 806 (D.S.C.1970); *Research Corporation v. Gourmet's Delight Mushroom Co., Inc.*, 560 F.Supp. 811 (E.D.Pa. 1983). Dorn argues that since he prosecuted the patent applications at issue in this case before the PTO, the requested documents exchanged between himself and Bulk Lift are protected.

## Work–Product Immunity

■ Rule 26 allows discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Rule 26(b)(3) constitutes a restriction on otherwise permitted discovery: it affords qualified protection to "documents and tangible things ... prepared in anticipation of litigation or for trial" by a party or the party's representative. If a party seeking discovery of such documents and tangible things demonstrates a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means" then discovery may be ordered. In any event, absolute protection is afforded to "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." As with the attorney-client privilege, however, the work-product protection does not apply to the underlying facts relevant to litigation, whether or not they have been reduced to writing or communicated to an attorney. *Upjohn Company v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981).

Finally, in order to come under work-product protection, the document or tangible thing at issue must have been "prepared in anticipation of litigation or for trial ..." More than the mere possibility of litigation must be evident before material is protected by the work-product immunity:

\* \* \* In patent cases, work-product immunity is not "extended to preparations for ex parte proceedings such as patent proceedings," *Choat v. Rome Industries, Inc.*, 462 F.Supp. [728] at 732 [(N.D.Ga.1978)]; *Hercules v. Exxon Corp.*, 434 F.Supp. 136, 152 (D.Del.1977). In reviewing this set of documents, it is clear that the materials were prepared and concern an ex parte proceeding before the patent office, and therefore, Pittway's claims of immunity cannot shield the documents from discovery.

*Detection Systems, Inc. v. Pittway Corporation*, 96 F.R.D. 152, 155 (W.D.N.Y.1982). Similarly, in this case, most of the items requested involve the application and prosecution of the ex parte patent applications, and do not constitute matters "prepared in anticipation of litigation or for trial." The documents requested in Items No. 6, 7 and 9, however, seek documents which arguably were prepared in anticipation of litigation. Specifically, these items are:

6. Any and all letters and opinions rendered by Thomas E. Dorn regarding the validity of one or more of the patents-in-suit.

7. Any and all letters or opinions rendered by Thomas E. Dorn relating to the infringement of one or more of the patents-in-suit.

9. Any and all correspondence forwarded to others or received from others relating to the infringement by others of one or more of the patents-in-suit.

To the extent that these items request documents prepared by Dorn in anticipation of litigation involving the '424 patent, these documents are protected under the qualified work-product immunity of Rule 26(b)(3). I note that Item No. 9 requests "any and all correspondence forwarded to others or received from others" which relate to infringement of Bulk Lift's patents. To the extent that this requests documents prepared by someone other than Bulk Lift, Dorn, or any other representative of Bulk Lift, such documents are not protected. It should be emphasized, however, that in order for such documents to be protected under the work-product immunity, litigation must be at least a contingency. *Stix Products, Inc. v. United Merchants and*

*Manufacturers,* 47 F.R.D. 334 (S.D.N.Y. 1969).

### Attorney–Client Privilege

As discussed above, the *prima facie* showing of fraud pertains only to the '764 patent proceedings, and the documents requested by defendants pertaining to the '424 patent proceedings retain whatever protection is available under the attorney-client privilege.

In *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.1978), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978), the Fifth Circuit adopted the standards set forth in *U.S. v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950) to establish the narrow scope of the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950).

In considering whether a proponent of the privilege is entitled to protection, the Court must place the burden of proof squarely upon the party asserting privilege. Accordingly, the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege. *See United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1984). A failure of proof as to any element causes the claim of privilege to fail. Dorn has supplied no information to the court to estab-

lish that the communications sought to be discovered or the documents requested fall within the narrow scope of the privilege. Moreover, the attorney-client privilege is further limited in patent proceedings. It has been held that in patent cases, certain categories of documents are not protected by the privilege. These include:

(1) Client authorizations to file applications and take other steps necessary to obtain registration;

(2) Paper submitted to the Patent Office and appearing in the file wrapper of issued patents;

(3) Compendiums of filing fees and requirements in the United States and foreign countries for patent applications;

(4) Resumes of patent applications filed and registrations obtained or rejected (including dates and file or registration numbers);

(5) Technical information communicated to the attorney but not calling for a legal opinion or interpretation and meant primarily for aid in completing patent applications;

(6) Business advice, such as that related to product marketing;

(7) Communications whose confidentiality has been waived;

(8) Documents written by or obtained from third parties, even though attached to communications seeking or giving legal advice (these will be separated and classified as non-privileged);

(9) Communications which pass through an attorney who acts only as a conduit for a third party or for a file; and

(10) Transmittal letters or acknowledgement of receipt letters, devoid of legal advice or requests for such advice, and disclosing no privileged matter.

*Duplan Corporation v. Deering Milliken, Inc., supra,* 397 F.Supp. at 1168–69; *Jack Winter, Inc. v. Koratron Company,* 54 F.R.D. 44, 47 (N.D.Cal.1971), and

(11) Patent disclosures, draft patent applications, technical non-legal material related to the final patent, or studies of the prior art.

*Sneider v. Kimberly–Clark Corporation,* 91 F.R.D. 1, 5, 7 (N.D.Ill.1980); *Choat v. Rome Industries, Inc.,* 462 F.Supp. 728, 732 (N.D.Ga.1978). *See also Detection Systems, Inc., supra* at pp. 154–155.

Applying these standards to the documents at issue, it is clear that Items 1 and 2 are not protected. To the extent that Item 3 consists of technical information communicated between the parties which does not call for a legal opinion or interpretation, these items are not protected by the attorney-client privilege. As noted above, Items 4, 5 and 8 are no longer in dispute. Items 6, 7, 9 and 10 appear to be protected by the attorney-client privilege insofar as they meet the standards enunciated above.

### CONCLUSION

Considering the foregoing, IT IS HEREBY ORDERED that Dorn appear for his deposition and respond to all questions in any way related to the '764 patent proceedings, and all questions relating to the '424 patent proceedings, the answers to which do not reveal protected attorney-client communications within the scope of the privilege outlined above. In the event Dorn claims the privilege as to any such communications, the defendants may question Dorn concerning the date, nature, circumstances, etc. of such communications to ascertain whether the privilege is properly invoked.

IT IS FURTHER ORDERED that Dorn produce at his deposition all requested documents with the exception of those relating to the '424 patent proceedings which are protected under the attorney-client privilege or the work-product immunity as discussed in this opinion.