**GLAXO, INC. and Glaxo Group Limited**

**v.**

**NOVOPHARM LTD.**

No. 91–759–CIV–5–BO.

United States District Court,
E.D. North Carolina,
Raleigh Division.

April 27, 1993.

Joseph W. Eason, Moore & Van Allen, Raleigh, NC, for plaintiffs.

John Rudy Wallace, Kirby, Wallace, Creech, Sarda & Zaytoun, Raleigh, NC, for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is currently before the court for consideration of two outstanding motions. Defendant Novopharm has moved to compel discovery of documents withheld by plaintiff Glaxo under an assertion of attorney-client privilege. Novopharm has also moved to vitiate the attorney-client privilege for certain documents that it contends were prepared by Glaxo employees and attorneys in furtherance of a fraud on the patent office. For the reasons set out below, the motion to compel is granted in part and denied in part, and the motion to vitiate privilege is denied.

## I. FACTS

### A. The Infringement Suit.

Plaintiff Glaxo currently holds two patents on a chemical known as ranitidine, which they have marketed as an anti-ulcer drug under the brand name Zantac. The first of these patents (the '658 patent), covers ranitidine generally, including a particular crystal

form of ranitidine hydrochloride which Glaxo calls Form 1. The '658 patent expires in 1995. The second patent (the '431 patent), covering a different crystalline form of ranitidine hydrochloride which Glaxo calls Form 2, expires in 2002.

In August of 1991, defendant Novopharm Ltd., a generic drug manufacturer from Canada, filed an Abbreviated New Drug Application (ANDA) with the Food and Drug Administration requesting permission to market a generic equivalent to Zantac upon the expiration of the '658 patent in 1995. This application constitutes statutory infringement on the '431 patent under 35 U.S.C. § 271, and Glaxo consequently filed the instant infringement action in November 1991. In its answer, Novopharm raised as a defense that the '431 patent is invalid because the product it protects was inherent in the '658 patent.

### B. Glaxo's Claims of Privilege.

In response to Novopharm's discovery requests, Glaxo has submitted a schedule of 180 documents which it contends are privileged as either confidential attorney-client communications or as attorney work product. Glaxo has refused to produce the materials listed in the schedule, and Novopharm challenges Glaxo's assertion of privilege for almost all of these documents.

In its initial memorandum in support of its motion to compel, Novopharm argued that certain documents withheld by Glaxo were not privileged. Glaxo's position in its response was that the requested documents are not relevant to the inherency defense Novopharm had raised, and that privilege was properly asserted for each of the classes of documents Novopharm challenged.

### C. Novopharm's Charges of Fraud.

At this point, Novopharm filed a reply reasserting its prior lack of privilege arguments. It also filed a motion to amend its answer to raise the defense of inequitable conduct, and in a separate document moved to vitiate privilege on the ground that certain submissions in support of the '431 patent were fraudulent and therefore fall within the crime-fraud exception to attorney-client privilege.

The basis for this set of filings apparently was Novopharm's belief after a period of discovery that not only was Form 2 produced when a chemist performs the Example 32 process patented in the '658 patent, but Glaxo knew this and knowingly made false representations to the contrary in the '431 patent application. Novopharm sought to use evidence of these alleged misrepresentations in two ways. First, Novopharm moved to amend its answer to raise the alleged fraud on the patent office as an affirmative defense. Second, it contends that the fraud provides a basis for vitiating Glaxo's claims of privilege under the crime-fraud exception, and argues that the court should therefore compel production of all documents prepared in the course of the alleged fraud.

In an order dated March 20, 1993, the court allowed Novopharm's motion to amend. It appears from Glaxo's schedule of privileged documents that all of the documents Novopharm has sought to compel would either relate directly to that inquiry or are likely to lead to other discoverable matter. See Fed.R.Civ.P. Rule 26. Having determined that the documents listed in Novopharm's motion to compel are relevant, the court turns first to whether the privileges asserted by Glaxo apply, and then to whether the privilege should be vitiated based on Novopharm's showing of fraud.

## II. DISCUSSION

### A. Defendant's Motion to Compel.

In its motion to compel, Novopharm challenges Glaxo's assertions of privilege for a number of documents which Novopharm alleges are (1) in the public domain, (2) addressed to technical and business rather than legal matters, (3) memoranda to the file (and thus not communications from attorney to client at all), or (4) communications received or authored by Glaxo's non-attorney patent agents in the United Kingdom. All the documents in each of these categories, Novopharm contends, should be produced.

Wigmore has defined the attorney-client privilege as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 J. Wigmore, Evidence § 2292 (MacNaughton rev. 1961). The purpose of the privilege is to encourage free communication between client and attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Although at its heart the privilege applies only to communications from client to attorney, protection "may ... be extended to protect communications by a lawyer to his client, agents or superiors, or to other lawyers in the case of joint representation if those communications reveal confidential client communications." *United States v. (Under Seal)*, 748 F.2d 871, 874 (4th Cir. 1984). Of course, if the client communicates information to the attorney with the expectation that it will be revealed to others, then that information and the underlying details are not privileged. *Id.*, at 875. In determining whether a communication is confidential, the reviewing court should look to the circumstances, including the services which the attorney was employed to provide. *Id.*

■ Keeping these standards in mind, the court now turns to the list of privileged documents provided by Glaxo in this case. The burden of proving privilege rests on the party resisting disclosure, *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Under Seal*, 748 F.2d at 876, so for each of the listed documents it is Glaxo's responsibility to show that they are protected. In order to carry its burden, Glaxo's schedule sets out the dates, addressor and addressee, and any copy recipients for each of the 180 documents, along with a brief description of the subject matter of the communication. Glaxo has also submitted the declaration of their trial counsel, Janet B. Linn, identifying of each of the addressors and addressees listed on the schedule by their position. The persons listed hold positions on the Glaxo corporate staff in the United States or the United Kingdom or as Glaxo employees, American attorneys or British patent agents.

### 1. Communications Prepared or Received by Foreign Patent Agents.

■ The largest number of documents challenged by Novopharm are communications either prepared or received by chartered patent agents associated with the firm of Elkington and Fife in the United Kingdom. The present law governing the status of communications to and from patent agents was accurately summarized in *Foseco International Ltd. v. Fireline, Inc.*, 546 F.Supp. 22, 25 (N.D.Ohio 1982):

Generally, communications between a patent agent and a *client*, where the patent agent is handling the matter on an independent basis, are not privileged. *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1 (N.D.Ill.1980); ... Communications between a patent agent and a client may be privileged, however, where the patent proceeding is before the United States Patent Office and the patent agent is registered with that office, *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 392–93 (D.D.C. 1978), or where that patent agent is acting at the direction or control of an attorney as the agent of the attorney. *Congoleum Industries Inc. v. G.A.F. Corp.*, 49 F.R.D. 82 (E.D.Pa.1969), *aff'd* 478 F.2d 1398 (3rd Cir. 1973).

Communications between foreign patent agents and a foreign corporation concerning the prosecution of a foreign patent are privileged if such privilege is recognized under the law of the foreign country in which the patent application is filed. *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 392 (D.D.C.1978); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146 (D.S.C.1975). Further, communications between an attorney and a patent agent, foreign or domestic, are privileged when the agent is acting under the direction and control of an attorney as his agent. *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136 (D.Del.1977); *Jack Winter, Inc. v. Koratron Co., Inc.*, 54 F.R.D. 44 (N.D.Cal.1971); *Congoleum Industries, Inc. v. G.A.F.*

*Corp.*, 49 F.R.D. 82 (E.D.Pa.1969), *aff'd* 478 F.2d 1398 (3rd Cir.1973).

The *Foseco* court went on, however, to hold that communications from a British patent agent acting at the direction and control of a British corporation in asking a U.S. attorney for legal advice concerning a U.S. application were privileged just as if they had come directly from the corporation itself. *Id.*, at 26. This holding has been criticized as unduly enlarging the scope of the attorney-client privilege, *see Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52 (D.D.C.1984), and the expansion of attorney-client privilege to foreign patent agents has been generally rejected by other courts. *See Status Time Corp. v. Sharp Electronics Corp.*, 95 F.R.D. 27 (S.D.N.Y.1982). This court finds persuasive the *Chubb* holding that a patent agent is an independent contractor and as such should not be treated as part of the corporate client for purposes of determining attorney-client privilege.

■ Accordingly, this court holds that communications between a foreign patent agent and a U.S. attorney concerning a U.S. patent application are not privileged unless the agent either registered with the U.S. patent office or is acting at the direction and under the control of an attorney. Glaxo has not asserted that Elkington and Fife meet either of these criteria, and therefore communications to and from them are not covered by the attorney-client privilege.[1] For all documents within this holding, the motion to compel is granted.

**2. Communications Concerning Glaxo Investigations.**

■ Glaxo contends that two of the documents challenged by Novopharm are communications sent as part of attorney directed investigations of Genpharm[2] (No. 150) and of the product to be produced by Novopharm under their ANDA (No. 160). Both of these communications, Glaxo claims, are protected by the work product privilege as well as the attorney-client privilege. Novopharm has argued that the attorney-client privilege should not apply to these documents, but has not disputed Glaxo's assertion that both of these communications were prepared at the direction of attorneys and in anticipation of litigation. Under these circumstances, the work product privilege applies. *See* Rule 26(b)(4), Fed.R.Civ.P. Since Novopharm has not shown any reason for overcoming the work product privilege, the court need not reach the issue of whether these documents are protected by the attorney-client privilege. The motion to compel is denied as to these documents.

**3. Documents Containing Public or Technical Information.**

■ Novopharm asserts that a number of the documents listed in Glaxo's schedule "rely entirely on patents or other public records," or "are technical in nature" and that therefore Glaxo could not have had the expectation of confidentiality necessary for application of the attorney-client privilege. Glaxo responds that there are no documents which either "rely entirely on patents or other public records" or are "exclusively technical in nature," that even if such documents were listed, they would be privileged.

The protections of the attorney-client privilege were once considered inapplicable to communications between patent attorneys

---

1. Of course, under the doctrine of comity, the privileged status of any communications between Glaxo and Elkington and Fife which relate solely to the prosecution of a British patent application should be governed by United Kingdom law. *Duplan Corporation*, 397 F.Supp. at 1170. In the United Kingdom, the Copyrights, Designs and Patents Act of 1988 § 280 and its predecessor statute, the Patents Act 1977 § 104 extend the privilege against disclosure to communications with registered patent agents concerning pending patent proceedings. Accordingly, any of the documents listed in Glaxo's schedule which relate solely to British patent proceedings are pro-

tected, and the motion to compel is denied as to all such documents.

2. Genpharm Pharmaceuticals, Inc. is a pharmaceutical manufacturer who filed an ANDA to market a generic version of Zantac several months before Novopharm filed its ANDA. In response, Glaxo filed an infringement action in this district against Genpharm—with issues and allegations similar to those in the instant case—but that case has now been transferred to the District of Maryland.

and their clients. *See e.g. Zenith Radio Corp. v. Radio Corp. of America*, 121 F.Supp. 792 (D.Del.1954). Holdings such as the one in the *Zenith* case were based on a view that patent prosecutions were entirely technical or scientific, rather than legal, in nature.

■ In *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), however, the Supreme Court made it clear that drafting patent prosecution documents was "the practice of law" and later courts have reasoned from this conclusion that the protections of the attorney-client privilege must attach to communications in the course of that practice. The protection of the privilege is not absolute, however. In order for the privilege to apply, all the requirements necessary for its application in other contexts still hold true, including those that the communications be made in confidence and relate to a request for legal advice. Thus documents which contain *only* information which is not confidential, *Duplan Corp. v. Deering Milliken*, 397 F.Supp. at 1168, or relate *only* to requests for technical or business advice rather than legal advice are not protected. *Bulk Lift International, Inc. v. Flexcon & Systems, Inc.*, 122 F.R.D. 482, 492 (W.D.La. 1988). Accordingly, it has been held that patent disclosures, draft patent applications, and studies of prior art are not protected, because they contain only matters of public record. *Id.; Sneider*, 91 F.R.D. at 5. Similarly, documents which relate exclusively technical data for inclusion in patent filings are not protected. *Status Time*, 95 F.R.D. at 31.

A broader understanding of the patent attorney's role has led the courts to recognize, however, that quite often communications containing some technical or public information also contain requests from the client for legal advice about how much of that technical information must be disclosed to the patent office or how public information affects the clients confidential legal affairs. The patent attorney is not simply a conduit between the client and the Patent Office; he or she also serves as a filter straining out that which must be included in patent.prosecution documents from that which may be held back. Courts have therefore held that where a communication contains technical data or public information intermingled with requests for legal advice or the rendition of such advice, the privilege will attach. *See Sneider*, 91 F.R.D. at 4.

Understanding this to be the law, the court cannot agree with Glaxo that even if the documents listed contain exclusively public information or technical data, they are still protected by attorney-client privilege. The scope of the privilege in the patent context is no greater than in any other area of the law. To the extent, however, that the documents challenged by Novopharm reflect either legal advice or requests for such advice, they are privileged, and the motion to compel is denied.[3]

### 4. Memoranda to File.

■ Novopharm also challenges the privileged status of a number of documents on Glaxo's schedule which Novopharm contends were prepared to be placed into a file, contending that such memoranda are not communications directed to anyone for the purpose of securing legal advice. In support of this argument, Novopharm cites *Sneider v. Kimberly–Clark*, 91 F.R.D. 1 (1980), in which the court held that whatever their source,

---

**3.** Glaxo has asserted, both in its response to Novopharm's motion and in the affidavit of its trial counsel, Janet B. Linn, that none of the documents listed contain exclusively technical or public information. Novopharm has urged the court not to accept these representations, and to require the documents to be produced *in camera* for further scrutiny. The court declines this invitation, adopting the court's admonition in *Standard Chartered Bank, PLC v. Ayala International Holdings, Inc.*, 111 F.R.D. 76, 86 (S.D.N.Y.1986):

> If this court were to review each and every document withheld as privileged in litigation

> ... for no reason other than counsel's distrust of his adversary, this courthouse could hardly function. [Counsel from whom discovery is sought] has an ethical duty as well as a duty under Fed.R.Civ.P. 11 to make a truthful, good faith determination of what documents are privileged and to present a proper listing.

The court will depend upon Glaxo's counsel to abide by the courts' holdings with respect to privilege and to produce those documents which under the court's order are not protected.

memos to the file did not fall within the ambit of attorney-client privilege.

Glaxo's response is that the facts, opinions, and conclusions contained in these memoranda to file were also transmitted to counsel for the purposes of obtaining legal advice. Such an argument misapprehends the purposes of the attorney-client privilege, however. It is the destination and purpose of a communication, not its content, which determines whether it is privileged. *See Under Seal,* 748 F.2d at 871. The inclusion of identical facts, opinions and conclusions in two documents does not assure that both will be protected if only one is directed to an attorney for the purpose of soliciting legal advice. For this reason several courts have held that merely routing documents intended for third parties through one's attorney does not bring the document within the scope of the privilege, *See e.g. Bulk Lift,* 122 F.R.D. at 492; *Duplan Corp. v. Deering Milliken,* 397 F.Supp. at 1168.

Of course, the absence of a claim of attorney-client privilege does not mean memoranda to the file need always be disclosed. If the memoranda are prepared in anticipation of litigation, then they are protected by the work product privilege. Glaxo has made no such claims about the memoranda listed on their schedule, however. As to each of these documents, Novopharm's motion to compel is granted.

## B. *Defendant's Motion to Vitiate Privilege for Fraud.*

Having determined that privilege was properly asserted for a number of the documents listed on Glaxo's schedule, the court now turns its attention to Novopharm's argument that certain documents listed in the schedule must be disclosed even if they meet the requirements of the attorney-client privilege because they were prepared in furtherance of a crime of fraud.

In order to pierce the protection of the attorney-client privilege, Novopharm must make a *prima facie* showing of fraud, and must show that the communications for which discovery is sought were made in furtherance of the fraud. *Hercules Inc. v. Exx-*

*on Corp.,* 434 F.Supp. 136, 155 (1977). Based on the submissions of the parties and their presentations at the hearing held April 21, 1993, the court concludes that Novopharm has not successfully carried that burden.

In support of their allegations of fraud, Novopharm has proffered evidence that on February 8, 1983, the Patent Examiner rejected Glaxo's claims in the '431 application as either anticipated or obvious from Example 32 of the '658 patent. On July 6, 1983, the Examiner conducted an interview with Glaxo's attorney to further discuss the rejection. The examiner's records shows that he agreed to consider data showing that the two forms had different structures, but that "a showing of unexpected properties is required also."

On July 8, Glaxo submitted a request for reconsideration in which they argued that Example 32 produces Form 1 ranitidine, which is structurally a different compound than Form 2, the form for which the '431 patent was sought. Glaxo also contended that Form 2 is easier to manufacture and has better drying and filtration characteristics than Form 1. The examiner denied this request as well, stating that the '658 patent "discloses (example 32) and claims (claim 18) the compound covered by the new application." The action went on to state that "applicants' arguments have been carefully cnsidered [sic]" but that "absent a verified showing with full explanation of the data, no patentable difference in structure is seen. Further, a mere difference in physical form absent a showing of unexpected properties does not establish a patentable distinction."

In response to this action, Glaxo filed on January 3, 1984 the declarations of two Glaxo scientists supporting its request for reconsideration. It is this submission which Novopharm claims was fraudulent, in that the declarations by Glaxo employees misrepresented certain data in an attempt to mislead the Examiner into finding that Form 2 was patentably different than the product of Example 32 of Form 1.

### 1. *The Hunt Declaration.*

Novopharm's first allegation of fraud arises from the declaration of John Herald

Hunt, a chemist who runs Glaxo's Spectroscopy Unit. Mr. Hunt's declaration contains the following language:

3. Under supervision and/or at my direct request, the product of Example 1 of the present application i.e. Form 2 ranitidine hydrochloride and *the product of Example 32 of US Patent 4128658* i.e. Form 1 ranitidine hydrochloride have been examined using infra-red, n.m.r. and ultraviolet spectroscopy and x-ray powder diffraction studies, and the result of these studies are reported below.

\* \* \* \* \* \*

5. Accompanying this declaration as Exhibit JHH 1 is a copy of the infrared spectrum . . . of Form 1 ranitidine hydrochloride. *This is the material prepared according to Example 32* . . .

\* \* \* \* \* \*

7. The infrared spectra for Form 1 and Form 2 ranitidine hydrochloride were obtained in my Spectroscopy unit and the differences in main peak positions are such that it is clear that in the solid state the two products are not the same.

Hunt Declaration at N00166, 167, 169. [emphasis added].

The parties agree that the sample which produced the infrared spectrum contained in Exhibit JHH 1 was not prepared using the Example 32 process. Glaxo also admits that no x-ray tests were ever conducted on samples of Form 1 ranitidine prepared using the Example 32 process. Whether these two facts prove that the Hunt declaration constitutes a fraud on the Patent Office, however, is a matter of sharp dispute.

The party seeking to vitiate privilege bears the burden of showing a *prima facie* case of fraud. In order to carry this burden, the movant must show (1) a knowing, willful and intentional act of misrepresentation or omission before the patent office; (2) that the misrepresentation or omission is material; and (3) that the patent office relied upon the misrepresentation or omission in deciding to issue the patent. *Bulk Lift International, Inc. v. Flexcon & Systems, Inc.,* 122 F.R.D. 482 (W.D.La.1988).

Applying these principles to the case at bar, the court holds that for Novopharm to make out a *prima facie* case that the Hunt Declaration was fraudulent, it must show that

(1) The samples used to produce Exhibit JHH1 and the x-ray powder diffraction studies referred to in the Hunt Declaration were not prepared using the Example 32 process (misrepresentation);

(2) The results of tests done on samples prepared using the Example 32 process would have been appreciably different than the results reflected in Exhibit JHH1 and the x-ray powder diffraction studies referred to in the declaration (materiality);

(3) Glaxo knew that Exhibit JHH1 was different from the spectrum which would have been produced using an Example 32 sample, and intentionally submitted Exhibit JHH1 with the intent to deceive the patent examiner (intent);

(4) The patent office relied on the submission (reliance);

The parties do not dispute that the sample used to produce Exhibit JHH1 was not prepared using the Example 32 process, so it is clear that Novopharm has carried its burden with respect to the first of these points. The court is also convinced, based on the context in which the Hunt Declaration was submitted, that the examiner relied on the contents of the declaration in finding that Form 2 has a patentably different crystalline structure than Form 1 prepared by the Example 32 process.

Based on the evidence submitted thus far, however, the court cannot conclude Novopharm has made out a prima facie case that Glaxo had the intent to deceive the patent examiner in producing these submissions. Novopharm relies on the context in which the Hunt Declaration was submitted as evidence of intent to mislead the patent examiner. Glaxo has responded with an affirmative showing that Hunt believed at the time of his declaration that all infra-red spectra and x-ray powder diffraction results obtained from samples of Form 1 ranitidine, prepared by

whatever process, were identical. Specifically, it is Glaxo's position that Exhibit JHH1 accurately represented the infra-red testing results which would appear from a test of Form 1 prepared according to example 32, and it support this assertion with the affidavit of David Trevor Collin, a Glaxo research chemist.

In his affidavit, Collin testifies that "the process of example 32 was first conducted on June 27, 1977 and is recorded at page 121 of my laboratory notebook No. 267. The process was repeated two days later as recorded on page 122 of my notebook." Appendix to Glaxo's Opposition to Novopharm's Motion to Vitiate Privilege ("Appendix"), Exhibit C, at 2. Copies of pages 121 and 122 were submitted to corroborate this statement. Appendix, Exhibits I, J. Glaxo has represented to the court that Example 32 of the '658 patent was written based on Collin's notebook description of the 1977 experiment.

The product of the experiment on page 122 was submitted to Hunt for infra-red testing shortly after it was completed, and the infra-red spectrum produced from that sample was submitted with Collin's affidavit as well. Appendix, Exhibit M. Exhibit M, the 1977 spectrum, is identical to Exhibit JHH1. Indeed, Collin's affidavit says that all of the infra-red spectra prepared from samples of Form 1 between 1977 and approximately 1980 were identical, and that Hunt was aware of this. Fewer x-ray powder diffraction tests had been conducted, but the results of all of those were identical for all Form 1 samples as well. Appendix, Exhibit C, at 3.

Novopharm has not controverted any of Glaxo's factual representations except its contention that Collin's 1977 experiment accurately followed Example 32. It is clear from comparing the notebook description of

the 1977 experiment and the patent's description of Example 32 that there are some differences in procedure, but Glaxo contends that these differences are not scientifically significant. Regardless of whether there actually are appreciable distinctions between the experiment and Example 32,[4] however, the fact that the example was written based on the experiment suggests that Glaxo did not believe that such differences existed. Absent some proof that Glaxo knew or believed that an Example 32 infra-red spectrum or x-ray result would somehow be different from Exhibit JHH1 and the x-ray results referred to in the Hunt Declaration, Novopharm has not carried its burden of showing that the declaration was intended to deceive. Novopharm has presented no such proof, and the Hunt Declaration therefore cannot be the basis for vitiating Glaxo's claim of privilege.

### 2. The Collin Declaration.

Also submitted with Glaxo's second request for reconsideration was a declaration from David Trevor Collin that Form 2 had certain qualities which made it less difficult and expensive to manufacture than Form 1. The first of these was the fact, which Collin called "surprising", that Form 2 could "most satisfactorily be prepared and isolated in a crystalline form in the presence of concentrated hydrochloric acid."[5]

Novopharm argues that it was a misrepresentation to assert that the ability to use hydrochloric acid to manufacture Form 2 is "surprising" since Glaxo had in fact been making Form 1 by this process for over a year when the patent application was filed. Glaxo's response is that although it had been using hydrochloric acid to manufacture ranitidine hydrochloride for some time at the

---

4. The variation, if any, between Example 32 and Collin's 1977 experiment will be the central question both in ruling on Novopharm's inherency defense and in deciding whether Glaxo's misstatement was materially misleading for purposes of ruling on Novopharm's inequitable conduct defense. Since the court finds no intent to deceive based on Novopharm's showing, however, the court expresses no opinion at this time on the ultimate question of whether Example 32 differs significantly from the Collin experiment.

5. "The fact that Form 2 ranitidine hydrochloride can be prepared using concentrated hydrochloric acid is a very important and most significant factor since it avoids the need to use hydrogen chloride gas," Collin asserts in his declaration. Hydrogen chloride is undesirable, he goes on to say, because it is "a corrosive substance which can only sensibly be obtained for commercial use in the form of a compressed gas and thus is not the easiest of materials to handle and contain under controlled conditions." Collin Declaration at N00179.

time of the '431 application, the knowledge that this was possible was private to Glaxo, and was not discovered until some two years after the '658 application was filed. Moreover, the ability to use hydrochloric acid was in fact "surprising" when compared with the state of the art at the time of the original patent. It is Glaxo's position that whether or not the '431 patent is inherent from Example 32 of the '658 patent is determined by looking at the state of the art at the time of the prior patent, not at the time of the '431 application.

In order to make a *prima facie* showing of misrepresentation, Novopharm's evidence "need not be such as to actually prove the disputed fact [but] it must be such as to subject the opposing party to the risk of nonpersuasion if the evidence as to the disputed fact is left unrebutted." *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215 (4th Cir.1976). The evidence must be sufficient to require Glaxo to "come forward with [an] explanation ... If the court finds the explanation satisfactory, the privilege remains." *In the Matter of Feldberg*, 862 F.2d 622, 625 (7th Cir.1988).

While Novopharm has presented enough evidence to require Glaxo to present an explanation, the court finds Glaxo's explanation sufficient in this case to permit the privilege to stand. The point of the Examiner's inquiries, and of Glaxo's responses to them, was not to determine by what methods Glaxo actually manufactured Form 1 in 1983, but to discern what if any different properties could be demonstrated between the product of Example 32 and Form 2 ranitidine. The product of Example 32 must logically be prepared using the Example 32 process, and that process does not permit the use of hydrochloric acid. Therefore the ability to use hydrochloric acid in the manufacture of Form 2 was precisely the kind of advantage over the product of Example 32 that the Examiner challenged Glaxo to show, and making this claim was not a misrepresentation.

In addition to his explanation of the use of hydrochloric acid, Collin also made certain representations about the drying and filtration characteristics of Form 2. He stated:

> Filtration and drying characteristics are also important in determining the ease with which a pharmaceutical can be obtained in pure form. These characteristics are not easy to measure objectively but my opinion, based on experience with the processes for preparing both Form 1 and Form 2 ranitidine hydrochloride, is that ... (Form 2) has better filtration and drying characteristics than ... (Form 1)

Collin Declaration at N00179. Novopharm argues that this statement falsely implies that the Form 2 drying and filtration characteristics were compared "head-to-head" with the characteristics of Form 1 *prepared by the Example 32 process*. Glaxo's response is that the declaration does not purport to represent such a "head-to-head" comparison; it only sets out observed differences between Form 1 and Form 2.

Once again, the court finds that Glaxo's explanation is sufficient. There is no specific reference in the Collin Declaration to preparation by the Example 32 process. Although the inability to make such a "head-to-head" representation keeps Collin's statements from being directly responsive to the Examiner's concerns, the declaration does not suggest that such a representation has been made. The court finds that this statement was not a misrepresentation, and therefore that the Collin Declaration does not provide a basis for vitiating privilege on the grounds of fraud.

## III. CONCLUSION

For all of the reasons set out above, the court holds that Novopharm is entitled to discover those materials found not privileged by the court, but that where privilege has been upheld it will not be breached based on the crime-fraud exception to attorney-client privilege. Since the issues addressed in this opinion and order are integral to the ultimate resolution of this action on the merits, the court restates that its holdings on these issues do not reflect any forecast of the outcome when the case is fully presented for trial on the merits.

For the reasons set out above, it is hereby ORDERED that:

1. Novopharm's motion to compel is GRANTED in part and DENIED in part, and Glaxo is directed to produce all documents held not to be privileged in the accompanying opinion.

2. Novopharm's motion to vitiate privilege is DENIED.

SO ORDERED.