33 F.3d 342
 30 Fed.R.Serv.3d 115
 In re GRAND JURY PROCEEDINGS, THURSDAY SPECIAL GRAND JURY
SEPTEMBER TERM, 1991.
UNITED STATES of America, Plaintiff-Appellee,
v.
UNDER SEAL; Under Seal, Defendants-Appellants,
and
Under Seal; Under Seal, Defendants.
In re GRAND JURY PROCEEDINGS, THURSDAY SPECIAL GRAND JURY
SEPTEMBER TERM, 1991.
UNITED STATES of America, Plaintiff-Appellee,
v.
UNDER SEAL; Under Seal, Defendants-Appellants,
and
Under Seal; Under Seal, Defendants.
 Nos. 93-5518, 93-5539.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 7, 1994.
Decided Aug. 29, 1994.
 
 ARGUED: Robert Charles Bonsib, Marcus & Bonsib, Greenbelt, MD, Joshua R. Treem, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, MD, for appellants. Ira Lee Oring, Asst. U.S. Atty., Baltimore, MD, for appellee. ON BRIEF: Sheryl G. Holtz, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, MD, for appellants. Lynne A. Battaglia, U.S. Atty., Jane F. Barrett, Asst. U.S. Atty., Baltimore, MD, for appellee.
 Before HALL, MURNAGHAN, and LUTTIG, Circuit Judges.
 Affirmed in part and remanded in part by published opinion. Judge MURNAGHAN wrote the opinion, in which Judge K.K. HALL and Judge LUTTIG joined.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 On June 21, 1993, the United States District Court for the District of Maryland granted the government's motion to compel the production of various documents to the grand jury investigating the billing practices of one of the appellants, which we will refer to as Subsidiary B of the Company.[1] The appellants asserted both attorney-client and work product privileges with respect to the responsive documents they withheld when served with the subpoena. The government submitted that the claimed privileges were not applicable to certain of the requested documents and that the privilege was vitiated with respect to others due to the crime-fraud exception. The appellants have appealed the district court's order requiring them to produce the documents on several grounds. Finding that the crime-fraud exception does vitiate the asserted privileges in some instances and that other asserted privileges do not apply, we agree with the government that the appellants must produce the subpoenaed documents. We do find merit, however, in the Attorney's assertion of the opinion work product privilege and, accordingly, require the district court to redact that material from the subpoenaed documents.
 
 BACKGROUND
 
 2
 A federal grand jury began investigating Subsidiaries A and B in September 1991. In October, Subsidiary A was served with a subpoena issued by the grand jury for the District of Maryland.[2] Subsidiary A produced some responsive documents but withheld a number of documents asserting attorney-client and work product privileges. Subsidiary A described those documents to the government in letters in late 1992 and early 1993.
 
 
 3
 In December 1992, the custodian of records for the Law Firm, and one member of that firm, the Attorney, were served with grand jury subpoenas. Asserting attorney-client and work product privileges, Subsidiary A instructed both the Firm and the Attorney not to produce documents in response to the subpoenas. While the Law Firm asserted those privileges, the Attorney also asserted a Fifth Amendment privilege with regard to his calendars and appointment books.[3] Appellants allege that the requested documents were from confidential client files revealing confidential client communications and the attorneys' mental impressions and opinions.
 
 
 4
 On April 23, 1993, the government filed a motion to compel compliance with the subpoenas insofar as documents were withheld because of privilege claims. The government claimed that many of the records were not covered by the asserted privileges and that all claims of privilege were abrogated because the services of counsel had been utilized to further a course of fraudulent and/or criminal conduct. In support of its motion to compel, the United States provided the court with an in camera submission which consisted primarily of grand jury testimony and documents supporting the applicability of the crime-fraud exception.[4] The appellants have not been given access to the submission.[5]
 
 
 5
 Subsidiaries A and B filed a motion to intervene with regard to the subpoenas directed at the law firm. After the court granted that motion, the appellants filed an opposition to the government's motion to compel, attaching ex parte exhibits providing detailed summaries of the requested documents for the court's review. The appellants also requested an opportunity to rebut the government's in camera submission. The government filed a reply.
 
 
 6
 The district court considered the submissions by both parties, but did not, according to the appellants, afford them the opportunity to make the requested rebuttal. On June 21, 1993 the court granted the government's motion, ruling that some of the documents were not covered by either asserted privilege and that, as to the other documents, the privileges could not be asserted "in light of the very strong case made by the government that the attorneys in question were used to perpetrate fraudulent conduct by individuals within the corporate hierarchy." The district court did not, at any time, review the actual documents at issue. The court made the determination that the privileges did not apply or, alternatively, were vitiated, on the basis of an in camera review of ex parte submissions by both parties. The court ordered the documents to be turned over within fifteen days but stayed the order pending appeal.[6] The appellants appealed to this Court.[7]
 
 
 7
 The September Session Grand Jury 1991 handed down two indictments in late August 1993. In the first indictment, Subsidiary B, its president, vice-president, and various other employees were charged with mail fraud relating to a scheme to defraud Subsidiary B's customers through millions of dollars of fraudulent billing in violation of 18 U.S.C. Sec. 1341. The second indictment charged that Subsidiary B, as well as various of its employees, defrauded Montgomery County, Maryland by setting up sham minority contractors to appear to comply with the county's minority set-aside program. Trial is pending on both indictments.[8]
 
 
 8
 On September 2, 1993 the grand jury expired, and the jurors were discharged. That week, the appellants filed a motion to dismiss the appeal as moot alleging that the Court of Appeals no longer had jurisdiction to hear the appeal. The government opposed the motion. A three-judge panel denied the motion without prejudice and the appellant was, therefore, free to brief and argue the mootness issue at oral argument.
 
 
 9
 The government has submitted a sealed supplemental appendix detailing its continuing investigation based primarily on the testimony before the grand jury. The government has requested that the appendix be considered in camera. The government's continuing investigation concerns efforts by the senior management of the Company and Subsidiary A to mislead company auditors and others regarding the scope of the billing fraud by Subsidiary B. Targets of the continuing investigation differ from those previously indicted.
 
 
 10
 Subsidiary A has withheld documents that are allegedly responsive to the subpoena and that relate to securities filings, correspondence with underwriters, memoranda and notes. The Law Firm has withheld documents allegedly relating to responses to audit letters by outside, independent auditors. The government informed the district court that the management of the Company and Subsidiary A engaged in a concerted effort to prevent disclosure of Subsidiary B's fraudulent billing practices. The submission purports to show that the attorneys were participants in the corporations' fraudulent activities that were designed to avoid public disclosure of the fraud. Although the appellants continually suggest that the attorneys were not active members of the cover-up but were merely used by the officers of the corporation, the government seems to have reason to believe that the attorneys did participate in the fraud.
 
 
 11
 Appellants argue that aside from the government's ex parte allegations, the government did not identify in its motion to compel, or in its letter to the appellants, the SEC statutes or regulations allegedly violated; the disclosures made to the SEC; or what was defective about those disclosures. The government's in camera submission seems to cover some of those topics, but the appellants do not have access to the submission.
 
 DISCUSSION
 
 12
 Appellants have contended that the Fourth Circuit does not have jurisdiction to hear the case because the appeal has been rendered moot by the recent indictments and the expiration of the September Term Grand Jury 1991. The appellants also have argued that the district court used improper procedures in the proceedings below, preventing the appellants from fully and fairly litigating the issues raised in this appeal. Specifically, the district court did not provide the appellants an opportunity to review and refute the government's ex parte in camera submission. Additionally, the district court did not articulate the basis for the crime or fraud that allegedly vitiates the privileges the appellants have asserted. They also make much of the fact that the district court failed to specify which privileges applied to which documents. Finally, the appellants have suggested that the district court issued a blanket vitiation rule without taking into account the discrete standards governing the various privileges; without reviewing the allegedly privileged documents in camera; and without stating the basis of the crime or the fraud on the record. The appellants have requested the Fourth Circuit to reverse and remand with instructions to apply proper procedures and standards and to make particularized findings regarding the privileges.
 
 MOOTNESS
 
 13
 The grand jury returned two indictments in August 1993. After the grand jury expired in September 1993, the appellants filed a motion to dismiss asserting that the court lacked jurisdiction to hear the appeal as the case had been rendered moot. We denied without prejudice the motion to dismiss. In their motion to dismiss, the appellants argued that once the grand jury had expired, the subpoenas issued by the government became unenforceable and the issue of their validity moot. The appellants cited Baltimore Sun Co. v. Goetz, 886 F.2d 60, 63 (4th Cir.1989), in support of the position that a case becomes moot when circumstances change to render a decision unnecessary unless the issue is capable of repetition yet evading review.[9] The "exception applies if (1) the challenged action is too short in duration to be fully litigated and (2) there is a reasonable expectation that the same party will be subjected to the same action again." Goetz, 886 F.2d at 63 (citations omitted).
 
 
 14
 The government has contended that the instant appeal falls within the exception to the mootness doctrine because 1) the issues raised therein are likely to be raised again; and 2) the nature of the grand jury will cause the issue to evade review. Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348-49, 46 L.Ed.2d 350 (1975). The government has based its argument on the assertion that the investigation will continue with a second grand jury and that the second grand jury can be expected to issue identical subpoenas. Because the issues are "likely" to recur, the government has suggested that any opinion rendered by the Court would not be purely an advisory opinion.
 
 
 15
 The subpoenas issued by the September Term 1991 grand jury (those at issue in the instant appeal) clearly do not have force as a result of the expiration of that grand jury. The government has pointed out, however, that the court will ultimately have to decide these very issues because they are destined to recur in another grand jury proceeding.[10] The two elements required for the application of the "capable of repetition, yet evading review" doctrine as reiterated by the Supreme Court in Weinstein are present in the instant case. There is more than a reasonable expectation that the complaining party, i.e., the appellants, will be subjected to the same action again. Additionally, as is apparent from the present proceedings, the life of a subpoena, measured by the duration of a grand jury session, is too short to be fully litigated prior to its expiration.
 
 
 16
 In Weinstein, the Court reviewed its decision in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), the first case to enunciate the "capable of repetition, yet evading review" branch of the law of mootness. In that case, the Court held "that because of the short duration of the Interstate Commerce Commission order challenged, it was virtually impossible to litigate the validity of the order prior to its expiration.[11] Because of this fact, and the additional fact that the same party would in all probability be subject to the same kind of order in the future, review was allowed even though the order in question had expired by its own terms." Weinstein, 423 U.S. at 149, 96 S.Ct. at 348.
 
 
 17
 The appellants have relied on the impropriety of using "a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." United States v. Dardi, 330 F.2d 316, 336 (2d Cir.) (upholding the use of the grand jury), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964). The records sought by the government, however, concern individuals other than those already indicted and other possible crimes. The government has requested that the case be assigned to a grand jury in order to continue the investigation of these crimes and is awaiting the outcome of this case to proceed further. The subpoenaed documents which the appellants wish to withhold relate to these other crimes under investigation by the government. The case before us is, consequently, not moot.PRIVILEGES AND THE CRIME-FRAUD EXCEPTION
 
 
 18
 Turning to the privilege arguments, the attorney-client privilege protects confidential communications between the client and the attorney. The client is the holder of the privilege. The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The work product privilege protects the work of the attorney done in preparation for litigation. The Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495, 509-14, 67 S.Ct. 385, 392-95, 91 L.Ed. 451 (1947), has guided work product doctrine. The Court wrote:
 
 
 19
 Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.
 
 
 20
 Hickman, 329 U.S. at 510, 67 S.Ct. at 393. The rule has been codified in Federal Rule of Civil Procedure 26(b)(3). "[E]xpressed in the Federal Rules in terms of discoverability of relevant material in civil cases, the work product principle also applies to criminal trials and grand jury proceedings." In re John Doe, 662 F.2d 1073, 1078 (4th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). Courts have analyzed the work product privilege in two contexts--fact work product and opinion work product. Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Id. at 1080. Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney. Id. at 1079-80.
 
 
 21
 We have recognized the crime-fraud exception in the context of attorney-client privilege and in the context of the work product doctrine. "The crime-fraud exception to the attorney-client privilege provides that a client's communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime or fraud.... In order to overcome [an asserted] privilege, the government must make a prima facie showing that the communications sought fall within the crime-fraud exception." In re Grand Jury Subpoena, 884 F.2d 124, 127 (4th Cir.1989). A district court's determination of whether the government satisfies this standard will not be reversed absent a clear showing of abuse of discretion. Id.
 
 
 22
 In Doe, the United States Attorney sought to obtain the records and documents of an attorney under criminal investigation by a grand jury. The documents contained fact and opinion work product. In that context, we held that "there is a fraud exception to the opinion work product doctrine" which applies to both attorneys and clients. Doe, 662 F.2d at 1079.[12] In Doe, we held that the party seeking disclosure on the basis of the fraud exception must make a prima facie showing of fraud as well as a greater need than that required to obtain fact work product material. Id. at 1080. We emphasized the fact that opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. Id.
 
 
 23
 Although Doe suggests that the party seeking to prove the exception must show a substantial need, a lack of a viable alternative and a prima facie showing of fraud, later cases indicate that only the prima facie showing of fraud is necessary to establish the exception. In re Grand Jury Proceedings, 674 F.2d 309, 310 (4th Cir.1982); In re Sealed Case, 676 F.2d 793, 814-15 (D.C.Cir.1982) (requiring a prima facie showing of a violation sufficiently serious to defeat the work product privilege and some valid relationship between the work product under subpoena and the prima facie violation).[13]
 
 
 24
 Although we have explicitly recognized a crime-fraud exception to the opinion work product doctrine, our cases have not addressed one of the specific questions before the court in the instant case. That question arises when the government establishes a prima facie case that the clients, here, the Company, Subsidiary A and Subsidiary B, were engaged in criminal conduct at the time they sought assistance of counsel, but fails to demonstrate that the attorney in question was aware of or a knowing participant in the criminal conduct. The record in the case does not indicate that the attorney engaged in the level of misconduct contemplated by our decision in Doe and, therefore, the attorney may not be said to have waived his right to assert the work product privilege. Because the attorney, as well as the client, has the right to assert the work product privilege, and because a prima facie case of fraud has not been made out as to him, the court should redact any portions of the subpoenaed materials containing the attorney's opinion work product.[14]
 
 
 25
 The clients' attempts to assert the attorney-client and work product privileges to avoid compliance with the subpoena, however, bear further consideration. The government has argued that many of the requested documents were not subject to privilege and that those that were protected by privilege were recoverable because the privileges were vitiated by the crime-fraud exception.
 
 
 26
 A. The Application of the Crime-Fraud Exception
 
 
 27
 To overcome the privilege asserted by the appellants, the government had to make a prima facie showing that the communications sought fell within the crime-fraud exception. In order to make a prima facie showing that the crime fraud exception vitiated the asserted privileges, the government made an in camera submission consisting of testimony presented to the grand jury. The court reviewed the government's submission along with a submission by the appellants summarizing the contents of the requested documents. On that basis, the district court decided that the exception was applicable to vitiate the privilege pertaining to several of the documents.
 
 
 28
 We will not reverse the district court's determination that the government made a prima facie showing of the appellants' crime or fraud "absent a clear showing of abuse of discretion." In re Grand Jury Subpoena, 884 F.2d at 127.
 
 
 29
 The appellants have argued that the procedure was unlawful in that the district judge denied the appellants their due process rights by examining the government's supporting evidence in camera and by refusing to allow the appellants any opportunity to refute the government's alleged showing of crime or fraud. Additionally, the appellants have claimed that the district court misapplied the in camera procedures established by United States v. Zolin, 491 U.S. 554, 565-74, 109 S.Ct. 2619, 2627-32, 105 L.Ed.2d 469(1989).[15]1. Procedural Propriety Under Zolin
 
 
 30
 United States v. Zolin, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), addressed the question of whether a court may examine allegedly privileged documents to determine whether the crime-fraud exception vitiates an asserted privilege. The party asserting the privilege in Zolin contended that the party invoking the crime-fraud exception had to establish the existence of the crime or fraud through the use of independent evidence. The Supreme Court rejected that argument, and held that the documents themselves could be examined to make the necessary determination.
 
 
 31
 Zolin also held that the party invoking the crime-fraud exception must make a threshold showing that in camera review is appropriate before a court may examine, in camera, the allegedly privileged documents that could potentially demonstrate the existence of the crime or fraud.
 
 
 32
 Before engaging in in camera review [of allegedly privileged documents] to determine the applicability of the crime-fraud exception, 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' ... that in camera review of the materials [at issue] may reveal evidence to establish the claim that the crime-fraud exception applies.
 
 
 33
 Id. at 572, 109 S.Ct. at 2631.
 
 
 34
 Zolin is not precisely analogous to the case before us because the district court in the instant case did not conduct an in camera review of the requested documents.[16] The government made an in camera submission to the district court in order to demonstrate a factual basis adequate to support its good-faith belief that the requested materials would reveal evidence establishing the applicability of the crime-fraud exception, i.e., to make a prima facie showing.
 
 
 35
 Zolin established the threshold showing required prior to a court's in camera review of allegedly privileged documents. Zolin did not provide a general rule applicable to all in camera reviews of any materials submitted by parties. The appellants have misconstrued and misapplied the rule established in Zolin by contending that the government was required to demonstrate an adequate factual basis to support its belief in the applicability of the crime-fraud exception prior to making any in camera submission to the district court. Zolin does not proscribe all in camera reviews of in camera submissions absent the requisite threshold showing. Rather, Zolin proscribes in camera review of the documents that are the subject of the subpoena and the asserted privilege in the absence of the requisite threshold showing. Zolin does not provide any guidance with respect to the in camera nature of the government's initial ex parte submission to the district court. Indeed, Fourth Circuit precedent has established the validity of such in camera procedures. See In re Grand Jury Proceedings, 674 F.2d at 310; In re Grand Jury Subpoena, 884 F.2d at 126-27.
 
 
 36
 After conducting an in camera examination of the government's ex parte submission and determining that the government had made the required threshold showing, the district court decided that the crimefraud exception had been established and that an actual in camera review of the allegedly privileged documents was unnecessary. The government's submission had proven to the court's satisfaction that the crime-fraud exception vitiated the privileges claimed by the appellants. Under Zolin, the decision to review the allegedly privileged documents in camera is one within the district court's discretion: "Once that [threshold] showing is made, the decision whether to engage in in camera review rests in the sound discretion of the district court." Zolin, 491 U.S. at 572, 109 S.Ct. at 2631. In Zolin, the Supreme Court noted that a district court is free to defer an in camera review if it concludes that additional evidence in support of the crime-fraud exception may be available that is not privileged. Id. Here, the district court had access to information obtained through the grand jury proceedings as a result of the government's in camera submission that made it unnecessary for him to review the documents. In addition, the appellants submitted summaries of the contested documents in camera . The district court made a decision that the exception applied on the basis of both the government's submission and the appellants' in camera submission and exercised its discretion not to review the actual documents.
 
 2. Due Process Argument
 
 37
 We have expressly held that a court's in camera examination of evidence supporting the applicability of the crime-fraud exception is not violative of due process. In re Grand Jury Proceedings, 674 F.2d at 310 (holding that the district court's in camera examination of evidence did not violate due process). In In re Grand Jury Subpoena, 884 F.2d at 126-27, the appellant asserted that the court's in camera procedure violated his due process rights because it did not give him an opportunity to challenge the validity of the evidence. We held that an in camera review of supporting evidence is not violative of due process, citing a Second Circuit case in support of that proposition, In re John Doe Corp., 675 F.2d 482 (2d Cir.1982) (holding in camera proceedings appropriate to protect the government's interests in secrecy when the government did not intend to reveal the grand jury materials to the witness).
 
 
 38
 The appellant in Grand Jury offered an earlier Second Circuit case, In re Taylor, 567 F.2d 1183 (2d Cir.1977), in support of his due process argument. In Taylor, the court set forth a balancing test, "weighing the government's interests in secrecy against the private interests affected by the court's in camera proceedings." Grand Jury, 884 F.2d at 126. In Grand Jury, we observed that John Doe limited Taylor's holding. The John Doe court noted that, in Taylor, the government's interests in secrecy were minimal because the government intended to disclose the grand jury materials. The John Doe court stated that "in instances where the government did not intend to reveal the grand jury materials to the witness, in camera proceedings were appropriate to protect the government's interests in secrecy." Grand Jury, 884 F.2d at 126.
 
 
 39
 In the instant case, the government has alleged that it continues to take every precaution to preserve the secrecy of the on-going investigation. Although the grand jury that issued the subpoenas at issue in the present appeal has expired, the government has formally requested that another grand jury continue the investigation. Based on the materials included in the government's in camera submission, a copy of which has been submitted to us, there is no reason to doubt the veracity of the government's characterization of the investigation as "ongoing." Considering the necessity of secrecy, the district court's decision to review the government's submission in camera was appropriate.
 
 
 40
 The appellants claim that they did not have access to the allegations contained in the government's in camera submission, and that they were not given an opportunity to refute those allegations. The requirement that the party invoking the crime-fraud exception make a prima facie showing of such crime or fraud would seem to anticipate a rebuttal from the party asserting the privilege.
 
 
 41
 In Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215 (4th Cir.1976), the appellants asserted that the documents they sought were discoverable under the crime-fraud exception to Rule 26(b)(3) governing opinion work product. We did not reach the question of whether a crime-fraud exception to the opinion work product privilege existed in that case because we found that the appellants invoking the exception had not made a prima facie showing that the appellees had violated the antitrust laws. We implicitly held that a prima facie showing of fraud or crime would be a prerequisite to an invocation of the crime-fraud exception if such an exception did exist.[17] We wrote:
 
 
 42
 We begin with the observation that while a prima facie showing need not be such as to actually prove the disputed fact, it must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the undisputed fact is left unrebutted. ... While such a showing may justify a finding in favor of the offering party, it does not necessarily compel such a finding.
 
 
 43
 Duplan, 540 F.2d at 1220 (citations omitted).
 
 
 44
 In Glaxo, Inc. v. Novopharm Ltd., 148 F.R.D. 535 (E.D.N.C.1993), the district court applied the Duplan standard to a case in which the defendant, Novopharm, moved to compel discovery of documents withheld pursuant to an assertion of attorney-client privilege, and to vitiate the attorney-client privilege for certain documents that were allegedly prepared by Glaxo employees in furtherance of a fraud on the patent office. "In order to pierce the protection of the attorney-client privilege, Novopharm must make a prima facie showing of fraud, and must show that the communications for which discovery is sought were made in furtherance of the fraud." Id. at 541. To make a prima facie showing of misrepresentation, Novopharm did not have to "actually prove the disputed fact" but had to submit evidence that would "subject the opposing party to the risk of nonpersuasion if the evidence as to the disputed fact [wa]s left unrebutted." Id. at 544 (citing Duplan). The evidence had to be sufficient to require the defendant to " 'come forward with [an] explanation.... If the court finds the explanation satisfactory, the privilege remains.' " Id. (citing In the Matter of Feldberg, 862 F.2d 622, 625 (7th Cir.1988)). In that case, the court held that, although Novopharm presented enough evidence to require Glaxo to present an explanation, Glaxo's explanation was sufficient to permit the privilege to stand. Id.
 
 
 45
 The obligation to come forward with an explanation and the right to an opportunity to refute the government's allegations of fraud is the strongest argument that the appellants have asserted. The appellants in the instant case claim that they, unlike the appellants in Glaxo, did not have an opportunity to refute or explain the charges contained in the government's in camera submission. The appellants have argued that, because the court made the crime-fraud exception determination solely on the basis of the government's in camera submission, the appellants were unable to come forward with an explanation because they were kept ignorant of the evidence that purportedly established the fraud.
 
 
 46
 All of our prior decisions indicate that the crime-fraud exception can be invoked on the basis of a prima facie showing of fraud or crime. We do not require absolute proof of fraud or crime. A prima facie showing, however, does seem to contemplate an opportunity to rebut, or a shifting of the burden.[18] Initially, the party asserting a privilege bears the burden of establishing that privilege. Likewise, the party invoking the crime-fraud exception to the privilege bears the initial burden of making a prima facie showing of fraud or crime. The crime-fraud standard does seem to contemplate the possibility that the party asserting the privilege may respond with evidence to explain why the vitiating party's evidence is not persuasive. In the instant case, the appellants have argued that they did not have the opportunity to respond to the government's crime-fraud evidence. The district court's order does not state the nature of the crime or fraud that provided the basis for the vitiation of the privileges because that information was presented ex parte.[19] Appellants assert that the procedures used by the district court have left them completely unable to answer or to refute the government's allegations.
 
 
 47
 However appealing it may sound, we have rejected such an argument in In re Grand Jury Subpoena, 884 F.2d at 126-28. In Grand Jury, the government moved the court to compel an attorney, Doe, to testify, asserting that the information at issue was not privileged because it fell within the crime-fraud exception to the attorney-client privilege. The client intervened and asserted the attorney-client privilege to prevent the attorney from testifying. The court convened the parties for a hearing and excused Doe and his counsel as well as the client's counsel from the hearing in order to receive the government's proffer of evidence on the crime-fraud exception in camera.
 
 
 48
 As in the instant case, the government's proffer was made in camera because it concerned matters subject to an on-going investigation before the grand jury. On the basis of that proffer, the court found that the government had established a prima facie case that Doe was used by the client to further a criminal scheme and that the testimony sought was highly relevant to the on-going investigation before the grand jury. The client or intervenor specifically argued that such a procedure denied him due process because "it did not give him an opportunity to challenge the validity of the evidence." Grand Jury, 884 F.2d at 126. As noted above, we held that in camera proceedings in the context of grand jury proceedings and on-going investigations requiring secrecy are not violative of due process. Grand Jury, 884 F.2d at 126-27.[20] In the instant case, as in Grand Jury, the government has the right to preserve the secrecy of its submission because it pertains to an on-going investigation.
 
 
 49
 The district court's decision to review the government's and the appellants' submissions in camera was an appropriate exercise of discretion, United States v. Zolin, 491 U.S. 554, 572, 109 S.Ct. 2619, 2631, 105 L.Ed.2d 469 (1989), and did not violate the appellants' due process rights. Under our precedents, the district court's procedures and ultimate decision in the instant case should be upheld on the basis of the government's need for secrecy.
 
 
 50
 B. The District Court's Rejection of the Asserted Privileges
 
 
 51
 Although the court ruled that several of the documents were discoverable pursuant to the crime-fraud exception, the court also ruled that other documents were discoverable because the asserted privileges simply did not apply. The appellants contest the district court's findings as to the latter group of documents. The district court's decision that certain of the subpoenaed documents were not subject to privilege is a mixed question of law and fact subject to de novo review. Sandberg v. Virginia Bankshares, 979 F.2d 332, 350 (4th Cir.1992). The burden is on the party asserting the privilege to demonstrate the applicability of the asserted privilege. In re Grand Jury 83-2 John Doe No. 462 (Under Seal), 748 F.2d 871, 876 (4th Cir.1984).
 
 1. Billing, Expense, and Travel Reports
 
 52
 The district court held that the billing records, expense reports, and travel records of counsel are not generally privileged as attorney-client communications. The attorney-client privilege normally does not extend to the payment of attorney's fees and expenses. United States v. (Under Seal), 774 F.2d 624, 628 (4th Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986). See also United States v. In re Grand Jury Matter, 789 F.Supp. 693, 695 (D. Md.1992) (fee arrangement information revealing the date and amount of payments and the identity of the persons making the payments are not privileged because these facts reveal nothing about the advice sought or given); In re Grand Jury Matter (Special Grand Jury Narcotics) (Under Seal), 926 F.2d 348, 349 (4th Cir.1991) (attorney-client privilege and Sixth Amendment do not prohibit disclosure of fee arrangements between attorneys and clients). After reviewing the appellants' in camera submission summarizing those documents, the court was not convinced that any of them would reveal a confidential communication. As noted in Grand Jury Matter, 789 F.Supp. at 696, "the attorney-client privilege does not function to prevent disclosure of damaging or incriminating information, rather, it protects against disclosure of confidential professional communications." The appellants did not carry their burden of establishing that disclosure of the billing records would disclose confidential communications. There was no possibility of a work product claim with respect to those documents.
 
 2. Public Disclosure Documents
 
 53
 The law firm refused to produce the drafts, notes, and memoranda generated in connection with audit responses to an outside auditor. Subsidiary A refused to produce drafts of securities filings ultimately filed with the Securities Exchange Commission (SEC) and related documents. The government has argued that the attorney-client privilege does not attach to documents prepared with the intention of public disclosure. The appellants have argued that, while the two final audit letters and SEC filings are not privileged, the underlying drafts, notes and memoranda reflecting client communications are protected by the attorney-client privilege.
 
 
 54
 The applicable cases are In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir.1984), and In re Grand Jury 83-2 John Doe No. 462 (Under Seal), 748 F.2d at 875-76. Grand Jury Proceedings held that the attorney-client privilege does not apply to communications in connection with a proposed public disclosure:
 
 
 55
 [I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as "the details underlying the data which was to be published" will not enjoy the privilege.
 
 
 56
 Under Seal, 748 F.2d at 875 (describing Grand Jury Proceedings' holding, 727 F.2d at 1356). The Grand Jury Proceedings court noted that "the loss of the privilege [is not] confined to 'the particular words used to express the communication's content' but extends 'to the substance of a communication,' since the disclosure of ' "any significant part" of a communication waives the privilege' and requires the attorney to disclose 'the details underlying the data which was to be published.' " Grand Jury Proceedings, 727 F.2d at 1356.
 
 
 57
 Under Seal noted that the mere relationship between the attorney and the client does not warrant a presumption of confidentiality. Yet the attorney-client privilege does protect communications made between attorney and client when the client is only considering publication of a disclosure document and is seeking legal advice regarding that possibility. "[W]e must look to the services which the attorney has been employed to provide and determine if those services would reasonably be expected to entail the publication of the client's communications." Under Seal, 748 F.2d at 875. The district court in the instant case found that the allegedly privileged documents revealed matters communicated to the attorneys for their use in connection with public disclosures which made the communications and data underlying them non-privileged under the relevant case law.
 
 
 58
 The appellants suggest that we should adopt the approach set out in Schenet v. Anderson, 678 F.Supp. 1280, 1283 (E.D.Mich.1988). The Schenet court, however, explicitly "decline[d] to follow the Fourth Circuit's opinion in [Grand Jury] (as modified by [Under Seal])" and adopted instead the approach suggested by a Nebraska district court. The Schenet court held that "the attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained in the document published and is not otherwise disclosed to third persons." Schenet, 678 F.Supp. at 1283. The Schenet court also held that preliminary drafts of documents intended to be made public may be protected by the attorney-client privilege, and that the privilege is waived only as to those portions of the drafts ultimately revealed to third parties. Id. at 1283-84.
 
 
 59
 The Schenet approach cannot be adopted in light of the obvious conflict with Under Seal. Under Under Seal, the only way the appellants can prevail is to demonstrate to the court that they did not retain the services of the attorneys for the purpose of advice on publication. Because SEC filings were actually completed and filed, that endeavor would be fruitless. The district court's decision that the materials connected with the publicly disclosed documents are not protected by the attorney-client privilege is affirmed.
 
 CONCLUSION
 
 60
 Accordingly, the district court's order requiring the appellants to produce the documents described in the subpoenas is affirmed in part and remanded in part. The appellants must produce the subpoenaed documents. As noted above, the district court must conduct an in camera review of the subpoenaed documents bearing evidence of the Attorney's opinion work product, and that material should be redacted by the district court.
 
 
 61
 AFFIRMED IN PART AND REMANDED IN PART.
 
 
 
 [1]
 Because the parties have requested that the identities of the companies and individuals involved in these proceedings remain confidential, we will refer to the appellants and relevant individuals and entities throughout as: the Company (a publicly traded corporation); Subsidiary A (a wholly owned subsidiary of the Company); Subsidiary B (a corporation acquired by Subsidiary A in 1988); the Law Firm (retained to represent Subsidiaries A and B); and the Attorney (a member of the law firm)
 
 
 [2]
 The grand jury was the Thursday Special Grand Jury, September Term 1991
 
 
 [3]
 In the Government's Opposition to Appellants' Motion to Dismiss as Moot the Pending Appeal, the United States has acknowledged that the appeal is "truly moot" as far as the Attorney is concerned. A subpoena was served on him personally. The government has indicated to his counsel that it will not seek production of his personal calendar because the notations therein are also contained on his business calendar
 
 
 [4]
 The government has submitted on appeal a copy of the submission for our in camera review
 
 
 [5]
 The government did provide the appellants with a letter describing the relevance of the requested documents to the billing fraud investigation and the alleged securities fraud
 
 
 [6]
 The appellants have submitted the summaries of the contested documents and accompanying affidavits to this Court in an ex parte appendix which we considered in camera
 
 
 [7]
 Shortly after the appellants filed a notice of appeal, the case was dismissed on the motion of the United States and subsequently reinstated for reasons no longer relevant to the proceedings
 
 
 [8]
 The material presented to the court in the government's in camera submission addresses criminal conduct other than that which is the subject of the indictments
 
 
 [9]
 The "unless" clause is of controlling importance here. In Goetz, we held that the case fell within that exception to the mootness rule
 
 
 [10]
 The grand jury expired after the order to provide subpoenaed material had been entered. Its implementation was delayed only to permit the appellants to pursue an appeal. If the appeal is unsuccessful, time wise we revert, on a nunc pro tunc basis, to when the order was entered by the district court, i.e., when the grand jury was still in existence
 
 
 [11]
 The ICC order in Southern Pacific required appellants to cease and desist for a period of not less than two years from granting and giving undue preferences and advantages to a certain shipper of cotton seed products. Southern Pacific, 219 U.S. at 499, 31 S.Ct. at 283
 
 
 [12]
 In Doe, we wrote that "[t]he fraud exception to the rule against compulsory disclosure of a lawyer's opinion work product must apply in proceedings against a suspected lawyer equally or even more readily than in a proceeding to obtain the information for use against a client who utilized fraudulent practices to obtain the lawyer's service." Doe, 662 F.2d at 1079
 
 
 [13]
 In In re Murphy, 560 F.2d 326, 338 (8th Cir.1977), the court held that if there is a crime or fraud exception to the work product privilege the party seeking discovery must prove that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing the attorney's opinion work product must bear a close relationship to the client's existing or future scheme to commit a crime or fraud."
 
 
 [14]
 We refer here only to the Attorney (not in-house counsel) who is a member of the law firm retained to represent Subsidiaries A and B. Inhouse counsel employed by Subsidiary A may not assert the opinion work product privilege to protect that corporation's documents because a prima facie case of fraud was made out as to Subsidiary A and its inhouse counsel which vitiates that privilege
 
 
 [15]
 The government asserts that, aside from the fact that the appellants' procedural argument lacks merit, the appellants failed to raise the issue below, thereby waiving it. National Wildlife Fed'n v. Hanson, 859 F.2d 313, 318 (4th Cir.1988). We have recognized that, in very limited circumstances, we may consider an issue that was not raised below if the error is plain. Id. at 318. The district court's application of the law did not constitute plain error in the instant case. Because we have found that the appellants have misconstrued and misapplied Zolin, we do not need to address the waiver issue
 
 
 [16]
 As the government has noted, the appellants did not request an in camera review of the documents themselves. Rather, the appellants submitted, in camera, brief memoranda reviewed by the district court summarizing the contents of the documents along with affidavits. The appellants stated below that "[s]hould the Court's review of the affidavit suggest that review of the particular documents themselves is necessary, they will be produced under seal for the Court's inspection." The court reviewed appellants' in camera submission describing the documents and felt it unnecessary to review the actual documents
 
 
 [17]
 As noted above, we explicitly held that there is a fraud exception to the opinion work product doctrine in Doe in 1981. Doe, 662 F.2d at 1079
 
 
 [18]
 The Zolin Court did not decide the quantum of proof necessary ultimately to establish the applicability of the crime-fraud exception. In a footnote, the Supreme Court noted that its use of the phrase "prima facie case" in an earlier decision, Clark v. United States, 289 U.S. 1, 14-15, 53 S.Ct. 465, 469-70, 77 L.Ed. 993 (1933), to describe the showing needed to defeat the privilege has caused some confusion. The Supreme Court cited a Note by Susan F. Jennison, 51 Brooklyn L.Rev. 913, 918-19 (1985), which included the following statement: "The prima facie standard is commonly used by courts in civil litigation to shift the burden of proof from one party to the other. In the context of the fraud exception, however, the standard is used to dispel the privilege altogether without affording the client an opportunity to rebut the prima facie showing. (emphasis in original)." Zolin, 491 U.S. at 563 n. 7, 109 S.Ct. at 2626 n. 7
 
 
 [19]
 As the appellants note, indictments have been returned regarding mail fraud. Appellants assert that if the government relied on mail fraud in its in camera submission to vitiate the asserted privileges, the subpoenaed documents are no longer subject to production to a grand jury and can only be obtained by the government through the use of trial subpoenas because trial is pending as to the mail fraud indictments. United States v. Dardi, 330 F.2d 316, 336 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 51, 13 L.Ed.2d 50 (1964), notes that it is improper to use a grand jury for the sole or dominating purpose of preparing an already pending indictment for trial. Based on the ex parte submission, however, mail fraud does not appear to be the basis on which the district court applied the crime-fraud exception
 
 
 [20]
 In so holding, we relied on our earlier holding that in camera procedures did not violate the appellant's due process rights. In re Grand Jury Proceedings, 674 F.2d at 310