USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1734

 IN RE GRAND JURY PROCEEDINGS

 (GREGORY P. VIOLETTE).

 ______________

 GREGORY P. VIOLETTE,

 Intervenor, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Selya, Boudin and Lipez,
 
 Circuit Judges.
 
 
 
 
 Jeffrey Silverstein and Billings & Silverstein on brief for
appellant.
 Jay P. McCloskey, United States Attorney, and Michael D. Love,
Assistant United States Attorney, on brief for the United States.

AUGUST 19, 1999

 
 

 SELYA, Circuit Judge. This matter presents an issue of
first impression: whether the nascent psychotherapist-patient
privilege encompasses a so-called "crime-fraud exception," parallel
to that which we previously have recognized anent the attorney-
client privilege. We hold that the privilege entails such an
exception and that the exception applies here. We therefore affirm
the district court's order enforcing grand jury subpoenas served
upon a pair of psychiatrists.
I. BACKGROUND
 To protect the secrecy of ongoing grand jury proceedings,
we limit our review of the facts to the bare essentials. Since at
least October 1997, Gregory P. Violette has been the target of a
federal grand jury investigation focused on possible bank fraud and
related crimes. The government says that Violette made false
statements to financial institutions (presumably in violation of 18
U.S.C. 1014) for the purpose of obtaining loans and credit
disability insurance; that he trumped up an array of disabilities,
which he communicated to selected health-care providers; and that
he caused information from these providers to be transmitted to the
companies that had underwritten the credit disability policies
(presumably in violation of 18 U.S.C. 1341), thus fraudulently
inducing payments.
 In February 1999, the United States subpoenaed two
licensed psychiatrists, Dr. Carol M. Spencer LeMay and Dr.
Epiphanes K. Balian, to appear before the grand jury and provide
evidence relating to Violette. The doctors appeared in March and
asserted the psychotherapist-patient privilege on Violette's
behalf. The government promptly sought enforcement of the
subpoenas and buttressed its effort with an affidavit of the case
agent, Michael Kelly, filed under seal. Violette countered by
moving to intervene and to secure access to all the investigative
information, or, alternatively, to Kelly's affidavit.
 The district court allowed Violette to intervene but
denied the motion for access. Violette then opposed enforcement of
the subpoenas. After hearing argument, the district court enforced
both subpoenas. Violette appeals, alleging: (1) that the denial
of access to the investigative materials violates due process; and
(2) that there is no crime-fraud exception to the psychotherapist-
patient privilege, or, alternatively, that the evidence sought by
the government falls outside the scope of any such exception.
 Because the grand jury term is set to expire in early
September and because additional delay threatens to exacerbate
statute-of-limitations problems, we granted the government's
request for expedited review. We consider Violette's claims in
reverse order inasmuch as the analysis underlying our resolution of
the second claim informs our resolution of the first.

II. THE PSYCHOTHERAPIST-PATIENT PRIVILEGE
 The Supreme Court recently recognized the
psychotherapist-patient privilege as a matter of federal common
law, holding "that confidential communications between a licensed
psychotherapist and her patients in the course of diagnosis or
treatment are protected from compelled disclosure." Jaffee v.
Redmond, 518 U.S. 1, 15 (1996). The Court left the exact
parameters of the privilege to future cases. See id. at 18. We
assume that mantle, mindful that Federal Rule of Evidence 501
authorizes federal courts to develop the common law of privileges
"in the light of reason and experience."
 As a general matter, a party asserting a privilege has
the burden of showing that the privilege applies. See 3 Jack B.
Weinstein & Margaret A. Berger, Weinstein's Federal Evidence 
503.06[7] (2d ed. 1997). To do so, the proponent of the privilege
must set forth facts sufficient to establish all the elements of
the claimed privilege. See Holifield v. United States, 909 F.2d
201, 203-04 (7th Cir. 1990); cf. In re Aug., 1993 Regular Grand
Jury, 854 F. Supp. 1392, 1398-99 (S.D. Ind. 1993) (suggesting that
a blanket assertion of the psychotherapist-patient privilege would
be insufficient). Hence, a party asserting the psychotherapist-
patient privilege must show that the allegedly privileged
communications were made (1) confidentially (2) between a licensed
psychotherapist and her patient (3) in the course of diagnosis or
treatment. See Jaffee, 518 U.S. at 15.
 The first two of these requirements are not in dispute
here. The district court found that the information to which the
subpoenas related was confidential, and the government does not now
challenge that finding. Nor does the government question the
credentials of the two psychotherapists. The battleground thus
narrows to the privilege's third furculum.
 The district court found that the communications to which
the subpoenas related were not made in the course of diagnosis or
treatment, and that a crime-fraud exception applied. The court's
implicit rationale appears to have been that because the
communications were made in furtherance of fraud, they could not
have served a bona fide therapeutic purpose.
 We find the district court's logic compelling on the
rather extreme facts of this case. We nonetheless are constrained
to note that the court blurred two distinct bases for enforcing the
subpoenas. The court might have reached that result either by
concluding that the communications in question do not satisfy the
requirements of the privilege or by concluding that the
communications satisfy the requirements of both the privilege and
an exception thereto. Such blurring is understandable and, in this
instance, unimportant. Cf. United States v. Zolin, 491 U.S. 554,
567 (1989) (suggesting that a strict progression of proof is not
required in crime-fraud cases). The facts set forth in Kelly's
affidavit afford a basis not only for concluding that the
communications were made outside the course of genuine diagnosis or
treatment, cf. In re Doe, 711 F.2d 1187, 1193 (2d Cir. 1983)
(holding that the psychotherapist-patient privilege did not protect
the records of a sham medical clinic that served as a front for the
illegal sale of drugs, based in large part on a finding that no
genuine therapy took place), but also that the crime-fraud
exception, if applicable to this privilege, extended to these
facts.
 We will not dwell unduly on this largely epistemological
conundrum. In this appeal, the government offers only the crime-
fraud rationale. For simplicity's sake, we therefore assume
(without deciding) that Violette's communications can be said to
have been made presumptively in the course of diagnosis or
treatment. On this assumption, Violette established the essential
elements of the privilege and the communications are protected
unless an exception pertains. It is to this question that we now
turn.

III. THE CRIME-FRAUD EXCEPTION
 The government urges wholesale importation of the crime-
fraud exception, as delineated in the context of the attorney-
client privilege, into the emerging jurisprudence of the
psychotherapist-patient privilege. Violette, in contrast, exhorts
us to refuse to recognize such an exception.
 The Jaffee Court did not envision the psychotherapist-
patient privilege as absolute or immutable. Rather, the Court
suggested the possibility of exceptions to the operation of the
privilege and prophesied that the details would emerge on a case-
by-case basis. See Jaffee, 518 U.S. at 18 & n.19. To our
knowledge, no court since Jaffee has determined whether the
privilege is subject to a crime-fraud exception. We hold that the
crime-fraud exception applies to the psychotherapist-patient
privilege.
 We start our exploration of this virgin terrain with a
methodological point. When a court is called upon to consider
modifying a privilege or adopting a new exception to it, the
appropriate inquiry is whether protecting a particular class of
confidential communications "promotes sufficiently important
interests to outweigh the need for probative evidence." Trammel v.
United States, 445 U.S. 40, 51 (1980). Common sense suggests, and
the Evidence Rules make explicit, that this type of judgment must
be made in light of "reason and experience." Fed. R. Evid. 501. 
In this area of the law, then, it is incumbent upon courts to hold
the often delicate balance between competing interests steady and
true. Justice Cardozo made this point well:
 [T]he recognition of a privilege does not mean
 that it is without conditions or exceptions. 
 The social policy that will prevail in many
 situations may run foul in others of a
 different social policy, competing for
 supremacy. It is then the function of a court
 to mediate between them, assigning, so far as
 possible, a proper value to each, and
 summoning to its aid all the distinctions and
 analogies that are the tools of the judicial
 process.

Clark v. United States, 289 U.S. 1, 13 (1933).
 In considering whether to recognize a previously
unannounced privilege, "a court must first decide whether a
qualified privilege exists or should exist before deciding how to
apply it to a particular case." In re Grand Jury (Granite
Purchases), 821 F.2d 946, 955 (3d Cir. 1987). We believe that the
task of articulating the scope of an existing privilege calls for
a similar approach. An inquiring court should first decide whether
a potentially relevant exception exists. If not, the court's
inquiry ends. If, however, the exception exists, the court then
must define its parameters sufficiently to ascertain whether the
specific facts of the case fit within its confines.
 Against this methodological backdrop, we ponder the
proposed crime-fraud exception. This exception grew up in the
shadow of the attorney-client privilege. It ensures that the
attorney-client privilege will "not extend to communications made
for the purpose of getting advice for the commission of a fraud or
crime." United States v. Reeder, 170 F.3d 93, 106 (1st Cir. 1999)
(citations and internal quotation marks omitted), petition for
cert. filed, 68 U.S.L.W. 3079 (U.S. July 9, 1999) (No. 99-79). 
"Thus, the attorney-client privilege is forfeited inter alia where
the client sought the services of the lawyer to enable or aid the
client to commit what the client knew or reasonably should have
known to be a crime or fraud." United States v. Rakes, 136 F.3d 1,
4 (1st Cir. 1998).
 To bring the crime-fraud exception to bear, the party
invoking it must make a prima facie showing: (1) that the client
was engaged in (or was planning) criminal or fraudulent activity
when the attorney-client communications took place; and (2) that
the communications were intended by the client to facilitate or
conceal the criminal or fraudulent activity. See United States v.
Jacobs, 117 F.3d 82, 87-89 (2d Cir. 1997). It is sometimes
suggested that the exception follows as a matter of logic from the
principle that motivates the privilege itself. After all, the
Supreme Court has stated that the purpose of the attorney-client
privilege is "to encourage full and frank communication between
attorneys and their clients and thereby promote broader public
interests in the observance of law and administration of justice." 
Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Using the
privilege to hinder proof of fraudulent or criminal activity would,
the suggestion goes, undermine this core purpose. See United
States v. Gordon-Nikkar, 518 F.2d 972, 975 (5th Cir. 1975); Diamond
v. Stratton, 95 F.R.D. 503, 505 (S.D.N.Y. 1982); 3 Weinstein &
Berger, supra, 503.16[1]; see also In re Richard Roe, Inc., 68
F.3d 38, 40 (2d Cir. 1995) ("Although there is a societal interest
in enabling clients to get sound legal advice, there is no such
interest when the communications or advice are intended to further
the commission of a crime or fraud.").
 We caution, however, that stating the justification for
the crime-fraud exception in this almost syllogistic fashion is
potentially misleading. There is more at work than a simple
dichotomy between crime or fraud, on the one hand, and justice, on
the other. We think that it is essential to clarify the rationale
behind the crime-fraud exception before considering transplantation
of the exception into new soil.
 In the attorney-client environment, this court has
justified the crime-fraud exception on the ground that protecting
communications made in furtherance of crime or fraud withholds
relevant information from the factfinder. See Reeder, 170 F.3d at
106. Of course, privileges almost always have this exclusionary
effect. Hence, the rationale for the exception must be that the
systemic benefits of protecting this category of communications are
outweighed by the costs of foregoing probative evidence of criminal
activity. The essential building block in the justification of the
exception, then, is the judgment that statements made in
furtherance of a crime or fraud have relatively little (if any)
positive impact on the goal of promoting the administration of
justice. This understanding is fully consistent with the
balancing approach that governs privilege analysis generally. See
Trammel, 445 U.S. at 50-51.
 To summarize, the attorney-client privilege exists as
matter of policy, not as a matter of logic. The benefits of full
and frank communication between clients and attorneys generally
have been deemed to outweigh the costs of probative evidence
foregone. The balance shifts, however, when a client communicates
for the purpose of advancing a criminal or fraudulent enterprise. 
Because such communications do not create a net benefit to the
system, the rationale that underpins the privilege vanishes (or, at
least, diminishes markedly in force).
 This is not say that courts delude themselves into
thinking that the effects of the crime-fraud exception on the
administration of justice are unambiguously positive. It surely
can be argued that if the veil of secrecy were totally opaque,
lawyers might have more opportunities to discourage illegal
behavior. But the crime-fraud exception reflects a policy judgment
that this potential discouragement does not justify the costs of
shielding highly probative evidence of antisocial conduct from the
factfinders' eyes.
 This brings us full circle. The Jaffee Court justified
the psychotherapist-patient privilege in terms parallel to those
used for the attorney-client privilege. Indeed, the Court embarked
on its examination of the privilege by noting that, "[l]ike the
spousal and attorney-client privileges, the psychotherapist-patient
privilege is 'rooted in the imperative need for confidence and
trust.'" Jaffee, 518 U.S. at 10 (quoting Trammel, 445 U.S. at 51). 
"Effective psychotherapy," the Court explained, "depends upon an
atmosphere of confidence and trust in which the patient is willing
to make a frank and complete disclosure of facts, emotions,
memories, and fears." Id. But the private interests of
psychotherapists and patients, while entitled to weight, do not
suffice to justify a privilege; that justification depends on a
showing that the privilege also serves the public interest. See
id. at 11. The Court, again likening the situation to the
attorney-client privilege, found such a public good in the
psychotherapist-patient context because psychotherapy promotes
mental health. See id.
 As the Supreme Court has framed the issues, the parallels
are striking. The attorney-client privilege and the
psychotherapist-patient privilege both exist to foster the
confidence and trust required for effective counseling
relationships (legal and psychiatric, respectively). The private
interests served by these relationships, however, do not justify a
privilege. Rather, we customarily respect the confidentiality of
communications made in the course of these relationships because,
on balance, doing so serves the public weal. The attorney-client
privilege promotes "the observance of law and administration of
justice," Upjohn, 449 U.S. at 389, just as the psychotherapist-
patient privilege promotes "[t]he mental health of our citizenry," 
Jaffee, 518 U.S. at 11.
 This sense of parity carries over to the crime-fraud
exception. In the attorney-client context, we exclude from the
privilege communications made in furtherance of crime or fraud
because the costs to truth-seeking outweigh the justice-enhancing
effects of complete and candid attorney-client conversations. In
the psychotherapist-patient context, we likewise should exclude
from the privilege communications made in furtherance of crime or
fraud because the mental health benefits, if any, of protecting
such communications pale in comparison to "the normally predominant
principle of utilizing all rational means for ascertaining truth." 
Trammel, 445 U.S. at 50 (quoting Elkins v. United States, 364 U.S.
206, 234 (1960) (Frankfurter, J., dissenting)). Several thoughts
inform this conclusion.
 First, it is difficult to conjure up a case in which both
mental health and criminal or fraudulent purposes might
simultaneously be advanced. In our view, communications that are
intended to further a crime or fraud will rarely, if ever, be
allied with bona fide psychotherapy and, thus, protecting such
communications will not promote mental health. In this regard, it
is important to emphasize that the crime-fraud exception will apply
only when the patient's purpose is to promote a particular crime or
fraud. Cf. Jacobs, 117 F.3d at 87-89. Thus, for example, a career
criminal's confessions to his psychotherapist will not fall within
the exception even though the therapy may generally increase the
patient's professional productivity. Only when communications are
intended directly to advance a particular criminal or fraudulent
endeavor will their privileged status be forfeited by operation of
this exception. Consequently, the slit we cut today in the shroud
of psychotherapist-patient secrecy will be slight and will not
chill much, if any, clinically relevant speech. Cf. In re Grand
Jury Subpoena (Psychological Treatment Records), 710 F. Supp. 999,
1014 (D.N.J.) (hypothesizing, pre-Jaffee, that "[t]he absence of
the privilege when the psychotherapeutic relationship may be
criminal will have . . . no adverse effect on society's interest in
fostering psychotherapeutic treatment"), aff'd, 879 F.2d 861 (3d
Cir. 1989) (table).
 On the other side of the balance, we believe that the
potential for abuse of the psychotherapist-patient privilege,
absent the engrafting of a crime-fraud exception, is a matter of
substantial concern. Psychotherapists could use the privilege to
deflect investigations into health insurance fraud. See In re
Zuniga, 714 F.2d 632, 634 (6th Cir. 1983); In re Pebsworth, 705
F.2d 261, 262 (7th Cir. 1983). Similarly, fraudulent personal
injury cases could find effective refuge under the umbrella of the
privilege. See In re Grand Jury Subpoena, 710 F. Supp. at 1014. 
Indeed, our quest for examples need not take us so far afield: the
government's version of the facts in the case at hand vividly
illustrates the potential for abuse should we recognize the
privilege but not the concomitant exception.
 In campaigning for reversal of the district court's
ukase, Violette ascribes great significance to the absence of a
crime-fraud exception from Rule 504 of the proposed Uniform Rules
of Evidence. In support of this argument by negative implication,
he points to proposed Rule 503(d)(1), the crime-fraud exception to
the attorney-client privilege. It is true that courts sometimes
look to the proposed rules for guidance, see, e.g., Jaffee, 518
U.S. at 14-15, but Violette offers nothing to show that the
drafters ever considered (let alone rejected) a crime-fraud
exception to the psychotherapist-patient privilege. Indeed, the
drafters may have thought it self-evident that communications made
for the purpose of furthering a crime or fraud would not be deemed
to be "made for the purposes of diagnosis or treatment." Unif. R.
Evid. 504(b). In all events, the sockdolager is that Congress
rejected Rule 504 in favor of the common law approach of Rule 501
(discussed supra). See H.R. Rep. No. 93-650, at 8 (1974),
reprinted in 1974 U.S.C.C.A.N. 7075, 7082. When reason and
experience lead us in a different direction than a rejected
provision in the proposed rules, we are bound by law to follow the
former.
IV. APPLYING THE CRIME-FRAUD EXCEPTION
 Having concluded that an exception to the privilege
exists, we next mull its applicability here. As explained above,
a party invoking the crime-fraud exception must make a prima facie
showing that the exception applies. The Supreme Court has
described the required quantum of evidence as "something to give
colour to the charge . . . that has some foundation in fact." 
Clark, 289 U.S. at 15 (citation omitted).
 Although we have not had occasion to flesh out this
rather sketchy standard, other courts of appeals have offered
varying interpretations. Compare, e.g., In re Grand Jury
Proceedings, 87 F.3d 377, 381 (9th Cir. 1996) ("reasonable cause"),
with In re Antitrust Grand Jury, 805 F.2d 155, 165-66 (6th Cir.
1986) ("probable cause"), with In re Feldberg, 862 F.2d 622, 625-26
(7th Cir. 1988) (evidence sufficient to require an explanation by
the party asserting the privilege, which the court describes as
less than a preponderance), with Haines v. Liggett Group Inc., 975
F.2d 81, 95-96 (3d Cir. 1992) (evidence which, if believed, would
be sufficient to support a finding that the elements of the crime-
fraud exception were satisfied), with In re Grand Jury Proceedings,
641 F.2d 199, 203 (5th Cir. 1981) (same, except that evidence to
the contrary is to be disregarded). This case presents no
occasion to pick and choose among these sundry formulations of the
standard. On the facts before us, the district court's
determination that the government carried its burden is
unassailable, regardless of which version of the standard applies.
 We review the district court's determination that
particular communications come within the crime-fraud exception for
abuse of discretion. See Reeder, 170 F.3d at 106. Kelly's
affidavit contains a wealth of evidence indicating that Violette's
communications to Drs. LeMay and Balian, respectively, were made as
part of a scheme to defraud lenders and/or disability insurers. 
Thus, the lower court's determination that the government
established the key ingredients of the crime-fraud exception that
Violette was engaged in or was planning illegal and fraudulent
conduct, and that he obtained assistance from the two doctors in
furtherance of this activity, see Jacobs, 117 F.3d at 87-89
(explicating the elements of the crime-fraud exception) was not
an abuse of discretion.
 Violette's fallback position is that the district court
erred in applying the crime-fraud exception because the
psychiatrists were not coconspirators, but at most unwitting pawns. 
The argument appears to be that since the psychiatrists believed at
the time that they were engaged in the professional treatment of an
authentic patient, the privilege should remain inviolate. It is
true that the doctors' innocence distinguishes this case from In re
Grand Jury Subpoena, 710 F. Supp. at 1001, on which the district
court relied but this is a distinction bereft of a meaningful
difference. The case law dealing with the crime-fraud exception in
the attorney-client context makes it transparently clear that the
client's intentions control. See, e.g., Clark, 289 U.S. at 15
("The attorney may be innocent, and still the guilty client must
let the truth come out."); United States v. Ballard, 779 F.2d 287,
292 (5th Cir. 1986) (stating that the exception attaches "when the
lawyer becomes either the accomplice or the unwitting tool in a
continuing or planned wrongful act"); United States v. Calvert, 523
F.2d 895, 909 (8th Cir. 1975) (explaining that "[i]t is the
client's purpose which is controlling, and it matters not that the
attorney was ignorant of the client's purpose"). We see no
credible basis for applying a different rule in the
psychotherapist-patient context.
V. THE DUE PROCESS CLAIM
 We next consider Violette's contention that the district
court infracted his right to due process because it did not afford
him access to evidentiary materials (in particular, the Kelly
affidavit). This contention lacks merit.
 The short of it is that denying Violette access to grand
jury materials did not deprive him of due process. The public
interest in the secrecy of grand jury proceedings generally
outweighs a party's interest in obtaining such materials. See,
e.g., In re Grand Jury Subpoenas, 144 F.3d 653, 662-63 (10th Cir.),
cert. denied, 119 S. Ct. 412 (1998); In re Grand Jury Proceedings,
Thurs. Special Grand Jury, 33 F.3d 342, 351 (4th Cir. 1994). That
rule has particular bite when, as now, compelling disclosure would
set the stage for satellite litigation in advance of grand jury
action. See United States v. Dionisio, 410 U.S. 1, 17 (1973) ("Any
holding that would saddle a grand jury with minitrials and
preliminary showings would assuredly impede its investigation and
frustrate the public's interest in the fair and expeditious
administration of the criminal laws.").
 The law seems well-settled that, in the context of grand
jury proceedings, the government may proffer ex parte the evidence
on which it bases its claim that a particular privilege does not
apply, and that the court may weigh that evidence, gauge its
adequacy, and rule on the claim without affording the putative
privilege-holder a right to see the evidence proffered or an
opportunity to rebut it. See, e.g., In re Grand Jury Subpoenas,
144 F.3d at 662-63; In re Grand Jury Proceedings, 33 F.3d at 352-
53; In re Antitrust Grand Jury, 805 F.2d at 167-68. We have no
desire to reinvent the jurisprudential wheel. Suffice to say that
there is nothing about the psychotherapist-patient privilege which
would impel us to depart from the accepted procedure or to question
its constitutionality. We conclude, therefore, that the district
court's decision to deny Violette access to the requested materials
did not offend due process.
VI. CONCLUSION
 We need go no further. For the reasons stated, we hold
that the psychotherapist-patient privilege, like the attorney-
client privilege, is subject to a crime-fraud exception; that the
district court did not abuse its discretion either in finding the
crime-fraud exception applicable to the subpoenaed evidence or in
enforcing the subpoenas issued to the two psychiatrists; and that
Violette's due process rights have not been abridged by denying him
access to the records of an ongoing grand jury investigation.

 The orders appealed from are affirmed. Mandate shall
issue forthwith.